[No. 50382–6.   En Banc.   September 27, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. BRUCE
T. COCKRELL, ET AL, *Appellants.*

*Catherine M. Merrill,* for appellants.

*John G. Wetle, Prosecuting Attorney, Dan B. Johnson, Deputy,* and *John E. Lamp, Special Deputy,* for respondent.

*James E. Lobsenz* on behalf of the American Civil Liberties Union, amicus curiae for appellants.

UTTER, J.—Bruce and Martha Cockrell allege that the Superior Court erred in denying their motion for change of judge under RCW 4.12.040 and RCW 4.12.050 in their trial for manufacture and possession of a controlled substance and that their right not to be placed twice in jeopardy for the same offense will be violated by a retrial of this case. They also claim that their right to privacy was unreasonably invaded by aerial surveillance of their property and that the warrant which issued for the search of their property was so broadly worded as to constitute a "general warrant." We conclude the trial court erred in denying appellants' motion for change of judge and find no constitutional problem with remanding the case for a new trial. In addition, we find that appellants' right to be free from unreasonable searches and seizures was not violated by the warrantless aerial surveillance or by the seizure of contraband on their property under the warrant which later issued. Accordingly, the case is reversed and remanded for a new trial.

On August 4, 1982, Jerry Bishop, Special Agent Pilot for the United States Drug Enforcement Administration (DEA), was conducting a training mission for the marijuana observer training school over a 280–acre portion of Stevens County that he considered to be a "classic marijuana growing area." During this flight he identified approximately 15

marijuana gardens growing in the wooded area below him. He contacted the local sheriff's department which had several officers accompany him on a marijuana identifying expedition on August 6. Mr. Bishop testified that during this mission he maintained an altitude of approximately 1,500 feet. The lowest altitude he allowed was 800 feet. From these heights, Mr. Bishop and his passengers had no difficulty identifying the marijuana gardens.

Appellants, Bruce and Martha Cockrell, observed these overflights from their 10–acre parcel which lay within the search area. On August 5 and 6 an additional plane from the school accompanied Bishop as he flew over appellants' property. At times this plane flew at an altitude as low as 200 feet. Appellants were disturbed by these later flights. However, they testified that Bishop's plane remained higher than the plane which accompanied him during these later overflights.

Pursuant to the overflight of August 6, a warrant was secured which authorized a search of the 280–acre tract of land where the marijuana gardens had been identified. The warrant included appellants' property. All persons, vehicles and buildings in the area could also be searched under the warrant. Upon executing the warrant the officers discovered a marijuana garden growing 50 to 100 feet from appellants' home. They also seized plants and paraphernalia from appellants' home.

Appellants were charged with manufacture and possession of a controlled substance, RCW 69.50.401, and arraigned in superior court on September 3, 1982. At their arraignment, an omnibus hearing was set for September 17 and trial was set for October 4.

Stevens County has two resident superior court judges. At the omnibus hearing one of these judges, Judge Kristianson, recused himself from hearing appellants' case because he knew them personally. On September 21, 1982, appellants' counsel moved for a continuance which was granted on September 23, 1982, by Judge Kristianson. Appellants waived their right to a speedy trial and the trial

date was continued to December 6, 1982.

In mid–October 1982, appellants' daughter testified as a witness in another matter before Judge Buckley, the trial judge who was scheduled to hear appellants' case. On November 16, 1982, appellants told their attorney of their fear that Judge Buckley was biased because of this prior contact with their daughter. On November 23, 1982, appellants' counsel filed a motion for change of judge and affidavit of prejudice with the Stevens County Clerk. (The motion was not officially recorded as filed until December 1, 1982.) The judge was out of the county at the time and was not scheduled to return until December 2, 1982, the day of the suppression hearing and 4 days before trial. The court clerk phoned the judge on November 29, 1982, and informed him of the motion. He denied the motion at that time and again on December 2, 1982, as not timely filed. His reasons for denying the motion included the extreme difficulty in obtaining another judge during the difficult weather they had been experiencing and the inadequate time he had been given to do so.

The trial court suppressed the plants and paraphernalia seized inside appellants' house because it found that the affidavit had not established probable cause as to those areas. It admitted the plants seized from the garden based on the sighting on August 4 by the DEA agent. It discounted the information gathered from the sightings on August 5 and 6 because it found the planes had flown so low as to constitute an unreasonable government intrusion into appellants' privacy. Appellants were convicted of manufacturing and possessing marijuana.

I

A motion for change of judge must be made in compliance with RCW 4.12.040 and RCW 4.12.050.

RCW 4.12.040 provides in part:

No judge of a superior court of the state of Washington shall sit to hear or try any action or proceeding when it shall be established as hereinafter provided that said

judge is prejudiced against any party or attorney, or the interest of any party or attorney appearing in such cause. In such case the presiding judge in judicial districts where there is more than one judge shall forthwith transfer the action to another department of the same court, or call in a judge from some other court.

RCW 4.12.050 provides, in pertinent part:

> Any party to or any attorney appearing in any action or proceeding in a superior court, may establish such prejudice by motion, supported by affidavit that the judge before whom the action is pending is prejudiced against such party or attorney, so that such party or attorney cannot, or believes that he cannot, have a fair and impartial trial before such judge: *Provided,* That such motion and affidavit is filed and called to the attention of the judge before he shall have made any ruling whatsoever in the case, either on the motion of the party making the affidavit, or on the motion of any other party to the action, of the hearing of which the party making the affidavit has been given notice, and before the judge presiding has made any order or ruling involving discretion, but the arrangement of the calendar, the setting of an action, motion or proceeding down for hearing or trial, the arraignment of the accused in a criminal action or the fixing of bail, shall not be construed as a ruling or order involving discretion within the meaning of this proviso; *and in any event, in counties where there is but one resident judge, such motion and affidavit shall be filed not later than the day on which the case is called to be set for trial . . .*

(Italics ours.) Once a party timely complies with the terms of these statutes, prejudice is deemed established "and the judge to whom it is directed is divested of authority to proceed further into the merits of the action." *State v. Dixon,* 74 Wn.2d 700, 702, 446 P.2d 329 (1968). Under the plain wording of the rule, the judge loses all jurisdiction over the case.

Appellants argue that they have timely complied with the terms of RCW 4.12.050 by filing their motion and affidavit prior to any discretionary ruling by the presiding judge. Respondent counters that, because one of the coun-

ty's two judges had recused himself from hearing the case, Stevens was a de facto 1–judge county for purposes of appellants' trial.

In *State v. Norman,* 24 Wn. App. 811, 603 P.2d 1280 (1979), the court set forth the rationale for the 1–judge county timeliness requirement:

> The purpose of the requirement that a defendant file his affidavit of prejudice in a 1–judge county not later than the day his case is called for setting is to assure the court sufficient time to arrange for a visiting judge to preside over a defendant's trial. To extend the filing time could cause problems under the speedy trial rule. CrR 3.3. Specifically, the court might have difficulty securing a visiting judge within the time period of that rule if a defendant had the right to file an affidavit of prejudice after his case was called for setting.

24 Wn. App. at 813.

If respondent's position that Stevens County was a 1–judge county for purposes of appellants' case is accepted, it did not become so until Judge Kristianson recused himself on September 17, 1982. Trial had already been set at this time; but a continuance was granted on September 23, 1982, by Judge Kristianson, at which time a new trial date was set. Under respondent's theory, September 23 was the critical date by which appellants were required to file their affidavit against Judge Buckley.

Yet here, appellants did not learn of the trial judge's possible prejudice until after their daughter testified before him in October. One month later they informed their counsel of this problem. Within 1 week thereafter, on November 23 or 24, appellants' motion and affidavit was filed with the court. Over 1 week remained before trial. On November 30, 1982, the State and appellants stipulated to a continuance until February 15, 1983. Appellants again waived their right to a speedy trial. Because appellants had eliminated any difficulty that might be posed by the speedy trial rule and had permitted additional time to secure an alternate judge, application of the 1–judge county rule is inappropriate here. For this reason, we decline respondent's invitation to

create a "de facto" 1–judge county rule on the facts of this case.

Appellants timely complied with the terms of RCW 4.12-.050 and the trial court was required by RCW 4.12.040 to grant their motion. Inasmuch as they timely complied with the statute, the trial judge had no jurisdiction over their case. Appellants, therefore, have never been tried by a court of competent jurisdiction and must be retried.

## II

Will a retrial violate appellants' constitutional right against being placed twice in jeopardy? The original trial court must have had jurisdiction over the defendant before double jeopardy attaches. *Serfass v. United States,* 420 U.S. 377, 43 L. Ed. 2d 265, 95 S. Ct. 1055 (1975); *State v. Ridgley,* 70 Wn.2d 555, 424 P.2d 632 (1967).

In *Serfass,* the Supreme Court set forth the basis for this rule under U.S. Const. amend. 5.

> Both the history of the Double Jeopardy Clause and its terms demonstrate that it does not come into play until a proceeding begins before a trier "having jurisdiction to try the question of the guilt or innocence of the accused." *Kepner* v. *United States,* 195 U. S. [100 (1904)], at 133. See *Price* v. *Georgia,* 398 U. S. [323 (1970)], at 329. Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy.

420 U.S. at 391–92.

In *Ridgley,* this court incorporated the Fifth Amendment rule into Const. art. 1, § 9, the double jeopardy provision of the Washington Constitution. We there set forth the rule for establishing double jeopardy under Const. art. 1, § 9: "(1) that [defendant] has previously been placed on trial for the same offense and (2) that the court of the former trial was one of competent jurisdiction to hear and determine the merits of the cause." *Ridgley,* at 557.

Because appellants here were never tried by a court of competent jurisdiction, retrial is appropriate and does not violate U.S. Const. amend. 5 or Const. art. 1, § 9.

## III

Appellants next claim that their private affairs were unreasonably intruded upon by the aerial surveillance in derogation of Const. art. 1, § 7 and that the warrant was not sufficiently specific to establish probable cause.

We recently upheld the constitutionality of aerial surveillance as a method by which police may investigate criminal activity. *State v. Myrick,* 102 Wn.2d 506, 688 P.2d 151 (1984). However, we there noted that aerial surveillance could be conducted in such an intrusive manner that it would become a search necessitating a warrant under Const. art. 1, § 7. The facts here presented do not fall within this category.

Appellant, Bruce Cockrell, testified that the aerial overflights over his home increased in intensity on August 5 and 6. According to DEA agent Jerry Bishop, three to four planes were surveying the 280–acre area from the marijuana identification training school on these days. Appellant noted two planes above his property on August 6. He testified that one plane, later identified as the plane in which Jerry Bishop was acting as pilot for the sheriff's department observers, remained high above appellants' property. However, the additional plane swooped erratically around their home, at times as low as 200 feet above ground level. The planes flew in figure–eight patterns above the Cockrell home several times during the morning and returned again in the late afternoon.

The trial court found that the activity of the planes, which were flying over appellants' property on August 5 and 6, was unconstitutionally intrusive. It, nevertheless, upheld the warrant on the basis of the August 4 identification of contraband which was made by the DEA agent. This overflight, it concluded, was not intrusive.

The difficulty here is that no mention of the previous overflight and identification by the DEA agent was made in the affidavit. Thus, if the August 6 overflight by the officer/affiant was unconstitutionally intrusive, the warrant would fall as the fruit of unlawful government surveillance. *Wong*

*Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).

There is nothing in the record to indicate, however, that the officers' plane was itself unreasonably intrusive. The erratic "buzzing" of appellants' home was the conduct of another plane. This improper behavior cannot be imputed to the officers here. The DEA agent who was flying the officers' plane testified that he did not descend below 800 feet during the flight over appellants' property. Appellant also testified that this plane remained "fairly high." The facts presented do not indicate the aerial surveillance of appellants' property constituted an improper search within the meaning of Const. art. 1, § 7.

## IV

Appellants challenge the validity of the warrant. They first maintain that the affidavit set forth insufficient facts to establish probable cause to search their residence, outbuildings, vehicles and persons. The trial court agreed with appellants and excluded from trial all evidence seized in these areas. Although this determination, alone, is not binding on remand, respondent has conceded this issue on appeal. We, therefore, accept the parties' argument that the affidavit did not establish probable cause to search these areas.

Appellants next claim the affidavit failed to indicate whether any of the marijuana gardens spotted from the air were on their property. They contend mere ownership of property within the general area at which the gardens were spotted is insufficient to establish probable cause to search. What appellants fail to note is that their property was included in the affidavit because officers spotted marijuana growing there. A particularized description or address specifying appellants' property was not necessary. In rural areas, where street numbers are not the standard means of identifying property, a legal description encompassing the suspect property is appropriate. *State v. Cohen,* 19 Wn. App. 600, 576 P.2d 933 (1978). A warrant is sufficiently

particular if it identifies the place to be searched adequately enough so that the officer executing the warrant can, with reasonable care, identify the place intended. *State v. Fisher,* 96 Wn.2d 962, 639 P.2d 743, *cert. denied,* 457 U.S. 1137 (1982). The warrant here described the property to be searched as:

NE 1/4, Sec. 11, T31, R41, NW 1/4, Sec. 12, T31, R41, Less S 1/2, SW 1/4, NW 1/4, Less S 1/2, SE 1/4, NW 1/4.

Appellants claim they have satisfied their burden of showing lack of sufficient particularity because the officers attempted to serve the warrant upon persons outside the described area. This is not really a challenge to the sufficiency of the description, but rather a charge that the executing officers were careless. With a "reasonable effort" the officers could have confined their search to the area delineated in the warrant. This is all that *Fisher* requires. *Fisher,* at 967.

Appellants' final attack on the warrant is that the invalid portions of the warrant were not severable from the valid portions. In *State v. Halverson,* 21 Wn. App. 35, 584 P.2d 408 (1978), the court considered a warrant which authorized a search of premises and all persons on the premises. Appellant argued there that the affidavit had not established probable cause to search each person. The court held that, even were appellant's assertion true, the warrant was severable because it described each target to be searched separately. Under this analysis, the remainder of the warrant would not fall for lack of probable cause to search a severable item. *Halverson,* at 37. This same result was reached in a similar situation in *United States v. Christine,* 563 F. Supp. 62 (D.N.J. 1983), and is consistent with the holding in *Aday v. Superior Court,* 55 Cal. 2d 789, 362 P.2d 47, 13 Cal. Rptr. 415 (1961), which held a warrant severable where certain items were described with sufficient particularity. *See also State v. Kealoha,* 62 Hawaii 166, 613 P.2d 645 (1980); *State v. DeGraw,* 26 Ariz. App. 595, 550 P.2d 641 (1976).

Although the severability doctrine is normally applied to the seizure of items, appellants have offered no persuasive reason not to apply it to the facts in this case. The warrant described the property specifically and then set forth the buildings and other locations on the property which could be searched. That there was insufficient probable cause to search these latter items should not invalidate the entire warrant.

The judgment is reversed and remanded for further proceedings consistent with this opinion.

WILLIAMS, C.J., ROSELLINI, BRACHTENBACH, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.