[No. 13449–3–I.   Division One.   December 31, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. JERROLD
W. SMITH, *Appellant.*

*Matthew W. Peach* and *William Johnston,* for appellant.

*David S. McEachran, Prosecuting Attorney,* and *Mac D. Setter, Deputy,* for respondent.

SCHOLFIELD, J.—Jerrold W. Smith appeals his conviction for violation of the Uniform Controlled Substances Act, following a bench trial on stipulated facts. He contends that the fruits of a search conducted pursuant to a search warrant should have been suppressed because the warrant lacked probable cause under *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964) and *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969). He also contends that the trial court erred in denying him an evidentiary hearing under *Franks v. Delaware,* 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978).

I

On February 3, 1983, Richard Denson, deputy sheriff for Whatcom County, appeared before District Court Judge David Rhea, Jr., requesting a warrant to search a mobile home and metal pole building, located at 8415 Carl Road, Sumas, Washington. Deputy Denson supported his request with an affidavit and oral testimony.

In his affidavit, Denson stated that Gerrold or Jerrold Smith and Mary Van Laanen owned the property and that it contained three buildings: a mobile home, a log cabin under construction on one side of the mobile home and a metal pole building on the other side, in which marijuana plants and growing equipment were to be found. The affidavit set forth the legal description of the property and listed the evidence sought as 100 to 150 3– to 4–foot marijuana plants, 4 to 6 halide lights, garden tools, a ventilation system and the ownership records of these items and of the property itself.

Deputy Denson testified that an informant had given him the name of the property owner and the name of a woman also living on the premises—"Mary". He testified that he had checked with the county assessor's office and had found that the property was listed under Jerrold Smith and Mary Van Laanen. Denson testified that the informant had also given him a memorized telephone number, which Denson had verified through the telephone company as belonging to a Jerrold Smith at the same address.

Denson testified that the informant had told him that he had seen the marijuana and the growing equipment in the metal pole building three times before: 2 months previously, 1 month previously, and on the previous Sunday or Monday—4 or 5 days before. Denson testified that the informant had described the plants and growing operation in considerable detail, had drawn a marijuana leaf for Denson, and had pointed out to Denson a similar growing operation depicted in a magazine.

Denson also testified that he was not aware that the informant had ever given false information to the police. He testified that he knew of no prior criminal history for the informant except for a current class C felony charge. He testified that an agreement had been made with the informant that if his information regarding the quantity of marijuana and the existence of a growing operation was found to be accurate, his felony charge would be reduced to a misdemeanor.

The District Court issued the search warrant and the police discovered and seized growing equipment and a considerable amount of marijuana.

On March 14, 1983, Smith's defense counsel filed a memorandum in support of a motion to contravene the search warrant, stating that it was known that Alan Dean was the confidential informant and that Dean had been interviewed on March 4, 1983 in the presence of his attorney and a deputy prosecuting attorney. In the memorandum, defense counsel asserted that Dean had stated during the interview that he had told Deputy Denson that he had not entered

the pole building on his visit to the property 4 or 5 days before the search. Defense counsel asserted in the memorandum that Dean had stated that he had entered the pole building approximately a month before and on earlier occasions, but that on his visit 4 or 5 days before the search he had only visited the trailer, although it was nighttime and he had seen lights on inside the pole building. Defense counsel also asserted that Dean had stated during the interview that Deputy Denson had promised him not only that his felony would be reduced to a misdemeanor, but also that he would receive no jail time and that his anonymity would be preserved and the charges against the defendants dismissed if developments indicated that he would be required to appear.

Defense counsel moved for a bench warrant for the arrest of Alan Dean as a material witness on March 15, 1983. This bench warrant was issued on March 16, 1983.

On March 17, 1983, a hearing was held addressing Smith's motion to dismiss and his motion to contravene the search warrant. Continental Telephone Company's safety security coordinator testified about Continental's security procedures concerning unlisted telephone numbers. Deputy Denson also testified. He admitted that Dean had never told him the street address and that he had never been to the property prior to the search. He also testified, however, that he was very familiar with the area and that Dean had pointed out the property on a county map, had drawn a "rough sketch map" and had described to him in great detail how to get to the property. Deputy Denson also testified that he had told Dean that the search warrant would be sealed and that if Dean's identity became known, he would meet with Dean and discuss the possible dismissal of the charges against the defendants. Denson admitted that he had not disclosed this to the district court judge.

The trial court denied Smith's motion to suppress and quashed the bench warrant for Dean. Smith and Van Laanen stipulated to the facts and were found guilty by the court. Smith appeals his conviction for manufacture of

marijuana, in violation of RCW 69.50.401(a).

## II

Smith contends that the trial court erred in denying his motion to suppress the fruits of the search conducted pursuant to the search warrant. He contends that there was no probable cause for the search warrant because the affidavit and the oral testimony of Deputy Denson failed to satisfy the "veracity" prong of the *Aguilar–Spinelli* test. He argues that the State established no "track record" for Dean and that the State failed to prove that Dean's information was reliable on this particular occasion.

In *State v. Jackson*, 102 Wn.2d 432, 688 P.2d 136 (1984), the Supreme Court recently refused to follow the analysis of *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983). The court held that article 1, section 7 of the Washington Constitution requires that the 2–prong *Aguilar–Spinelli* test must be met in evaluating the existence of probable cause when a warrant is based on an informant's tip.

The two prongs of the *Aguilar–Spinelli* test are "basis of knowledge" and "veracity." The "basis of knowledge" prong requires that the officer explain to the magistrate how the informant claims to have come by the information. The "veracity" prong requires that the officer explain to the magistrate why the officer concluded that the informant was credible or that the informant's information was reliable in this instance. The "basis of knowledge" prong can be satisfied by the informant's direct personal observations or, under certain circumstances, by information given to the informant that would be hearsay. The "veracity" prong can be satisfied by establishing the informant's "track record" or by establishing that the information is reliable because it is a declaration against interest. Also, the court in *Jackson* held that either or both of the *Aguilar–Spinelli* prongs can be satisfied by independent police investigatory work that corroborates the informant's tip. *Jackson*, at 438.

Smith concedes that the "basis of knowledge" prong was

satisfied in this case. He challenges only the "veracity" prong.

In *State v. Bean,* 89 Wn.2d 467, 572 P.2d 1102 (1978), the court considered the reliability (veracity) of an informant who had provided the police with information in exchange for a favorable sentencing recommendation. The court held:

> Because of the strong motive that Hawn had to be accurate in the information he provided the officers, we believe Hawn qualifies as a reliable informant upon whom the police were justified in placing reliance.

*Bean,* at 471. The court upheld the warrantless arrest of the defendant and the warrantless search of his van, both of which had been based on the information supplied by the informant. The court's holding in *Bean* was recently cited with approval in *State v. Jackson, supra* at 437.

Smith attempts to distinguish *Bean,* arguing that *Bean* involved a named informant, that in *Bean* the informant's information was buttressed by information from other reliable informants and that, in this case, the "deal" also included sealing the warrant and dismissing the case should the informant's identity be revealed.

Smith's attempts to distinguish *Bean* are unpersuasive. Although the informant's identity in *Bean* was known and his information buttressed by information from other informants characterized as "reliable," these circumstances did not underlie the court's holding. The rationale for the court's holding was that the offer of a favorable sentence recommendation gave the informant a strong motive to provide information that was accurate. *See* 1 W. LaFave, *Search and Seizure* § 3.3(c), at 528–29 (1978) and 146–47 (Supp. 1984) (arguing and citing case authority for the proposition that a person in the position of the informant also would "not lightly undertake to divert the police down blind alleys."). This rationale is applicable here because the offer of a reduction in charge from a felony to a misdemeanor gave Dean a strong motive to provide accurate information. Finally, the alleged details of the deal do not

contradict the argument that Dean had a strong motive to be truthful. If anything, Dean's concern with confidentiality supported the conclusion that his information would be accurate. We hold that the "veracity" prong of the *Aguilar–Spinelli* test was satisfied because under the circumstances, Dean had a strong motive to provide accurate information.[1]

Smith next contends that the search warrant was invalid because it identified the place to be searched as 8415 Carl Road, Sumas, Washington, rather than the correct address of 8415 Carl Road, Everson, Washington. He argues that (1) the correct legal description of the property in the warrant was irrelevant because there was no showing that the police officers relied upon it in executing the warrant, (2) Deputy Denson testified that he had not gone to the premises prior to the execution of the warrant, (3) Carl Road was not openly identified by name and the property was not openly identified as belonging to Smith, (4) the warrant stated that three buildings stood on the property when, in fact, there were four, and (5) the county assessor's records and the records of the telephone company do not list the address as in Sumas.

■ The Fourth Amendment provides that no warrants shall issue except those "particularly describing the place to be searched".[2] A perfect description is not required. It "is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended." *Steele v. United States, 267*

---

[1]Smith also contends that Deputy Denson's verification of Smith's unlisted telephone number should have been suppressed as an improper search under either the Fourth Amendment or article 1, section 7 of the Washington Constitution. We do not reach this issue because we hold that the "veracity" prong was satisfied because Dean had a strong motive to be truthful rather than because his information was corroborated.

[2]The fourth amendment to the United States Constitution provides:
"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

U.S. 498, 503, 69 L. Ed. 757, 45 S. Ct. 414 (1925). Also, the purpose of the description requirement is to avoid a mistaken search. The burden of proof is on the defendant to show that the property searched reasonably could have been confused with another property. *State v. Fisher,* 96 Wn.2d 962, 967, 639 P.2d 743, *cert. denied,* 457 U.S. 1137 (1982); *State v. Rood,* 18 Wn. App. 740, 746 n.5, 573 P.2d 1325 (1977). Finally, when the address is incorrect, information concerning the location of the property based upon the officer's personal knowledge of the location of the property may be considered in determining whether the property to be searched is sufficiently identified. *Fisher,* at 967; *Rood,* at 744–45.

Smith has made no showing that there was a similar address that could have been mistakenly searched. He has made no showing that a Carl Road even exists in Sumas, Washington. Also, Deputy Denson testified that he was very familiar with the roads in the vicinity of the property and that Dean had pointed out the property to him on a county map, had drawn him a map and had given him a very detailed description of how to get to the property, including driveways and dips in the road. We hold that under these circumstances, the description was such that Deputy Denson could, with reasonable effort, ascertain and identify the place intended.

### III

Finally, Smith contends that the trial court erred in quashing the material witness warrant for Dean because it thereby denied Smith a hearing under *Franks v. Delaware, supra.*

Smith contends that he made an adequate showing at the contravention hearing on March 17, 1983, to require that an evidentiary hearing be held at which Dean would testify concerning the truth of the facts alleged by Deputy Denson in his affidavit and oral testimony. He contends that in seeking the search warrant Denson either intentionally or in reckless disregard of the truth (1) misstated to the court

that the informant had observed the marijuana 4 or 5 days before when, in fact, Dean told Denson only that he had observed it 6 months before,[3] and (2) omitted from his testimony to the court that the deal with the informant also included a promise that the informant's identity would be protected, even if it meant that the charges against Smith and Van Laanen would have to be dismissed.

■ To have been entitled to a hearing under *Franks v. Delaware*, Smith had to make a substantial preliminary showing that Denson's alleged misstatement and omission were made with deliberate falsity or in reckless disregard of the truth. Also, this misstatement and omission must have been necessary to the finding of probable cause:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause,

---

[3] Regarding this issue, at pages 27–28 of his brief, Smith argues that Dean stated at the interview that he had told Deputy Denson only that he had observed the marijuana 6 months before; however, defense counsel stated in his memorandum in support of the motion to contravene the search warrant that Dean stated in the interview that he had entered the pole building approximately 1 month before and on earlier occasions, and that on his visit 4 or 5 days before the search he had seen lights on inside the building.

no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.

(Footnote omitted.) *Franks,* 438 U.S. at 171–72.

We do not need to reach the issue of whether Smith made a substantial showing that Denson's affidavit and testimony in obtaining the search warrant contained deliberate falsehoods or statements made in reckless disregard for the truth. We hold that if Denson's testimony that Dean had seen the marijuana and growing operation 4 or 5 days before is set to one side, there remains sufficient content in the affidavit and Denson's other testimony to support a finding of probable cause.

■ The facts underlying the determination of probable cause for issuance of a search warrant must be sufficient to justify the conclusion that the property to be seized probably is on the premises to be searched at the time the warrant is issued. *State v. Partin,* 88 Wn.2d 899, 904, 567 P.2d 1136 (1977). The support for issuance of a search warrant is sufficient if, considering the affidavits and testimony offered, an ordinary person would understand that a violation existed and was continuing at the time of the warrant application. *State v. Clay,* 7 Wn. App. 631, 637, 501 P.2d 603 (1972). In this case, even if Denson's testimony that the informant had visited the property 4 or 5 days before the warrant application is not considered, Denson also testified that the informant had visited the property 2 months before and 1 month before. Denson also testified that the informant had observed an extensive growing operation: 100 to 150 3- to 4-foot plants, together with the requisite lighting and other equipment. We find that given the nature of the operation observed 1 and 2 months previously, probable cause existed to issue a search warrant. *See State v. Johnson,* 17 Wn. App. 153, 561 P.2d 701, *review denied,* 89 Wn.2d 1001 (1977) (information 4 months old held not too remote). We hold that no hearing was required because, if the testimony challenged by Smith is set to one

side, there remains sufficient evidence in the testimony and affidavit to support a finding of probable cause.

Judgment affirmed.

SWANSON and CALLOW, JJ., concur.

Reconsideration denied February 1, 1985.

Review denied by Supreme Court May 10, 1985.