[No. 13523–6–I.   Division One.   December 20, 1985.]

MICHAEL L. SCHONS, *Appellant,* v. THE DEPARTMENT OF TRANSPORTATION, *Respondent.*

*Roger K. Garrison,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *John T. Hurley, Assistant,* for respondent.

SWANSON, J.—Michael L. Schons appeals a superior court judgment affirming administrative denials of Schons's claims for damages. The claims were made pursuant to RCW 8.26, the relocation assistance act, after Schons relocated his dairy herd from Yakima to Skagit County following the State's condemnation of his farm for highway construction.

Michael L. Schons and his family operated a dairy farm near Sunnyside in the Yakima Valley. The 75–acre farm was subject to a condemnation action when it was determined that interstate highway I–82 would bisect Schons's property. The eminent domain action was settled in April 1979 prior to trial when the State purchased 25 acres for $400,000. Schons eventually traded the remaining 50 acres for 360 acres of land in Skagit County and moved his herd in early 1980.

Following the move, Schons applied for and received approximately $14,000 in relocation assistance pursuant to RCW 8.26, the relocation assistance act. The denial of claims for three items is the subject of this appeal. Schons

first appealed the denial through the administrative process. Following a hearing in November 1981, a hearing examiner prepared a memorandum opinion and findings of fact and conclusions of law. The hearing examiner's denial of Schons's claims was later affirmed by the Secretary of Transportation and by the Superior Court for Skagit County.

Schons's general allegation on appeal is that he has been denied just compensation for the taking of his property. However, because the eminent domain proceeding for Schons's land was settled by the parties prior to trial, Schons asserts his claims in the context of RCW 8.26. RCW 8.26 is similar to the federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4601 *et seq.*, and was not intended to provide an alternative basis for full "just compensation" claims. *See, e.g., Division of Admin., State Dep't of Transp. v. Grant Motor Co.*, 345 So. 2d 843 (Fla. Dist. Ct. App. 1977) (construing comparable federal provisions).

In his assignments of error and formulation of issues, Schons implies, among other things, (1) that the trial court improperly entered findings that were inadvertently omitted by the hearing examiner; (2) that loss of milk production constitutes "personal property" within the meaning of RCW 8.26; and (3) that WAC regulations prohibiting compensation for lost profits as a moving expense are unconstitutional. Not one of these contentions is specifically addressed in the argument section of Schons's brief or supported by citation to relevant legal authority.

Schons's argument on appeal rests solely on a recitation of general legal principles pertaining to the concept of "just compensation." Assignments of error unsupported by legal argument and citation to authority need not be considered on appeal. *Transamerica Ins. Group v. United Pac. Ins. Co.*, 92 Wn.2d 21, 29, 593 P.2d 156 (1979); *In re Port of Seattle*, 80 Wn.2d 392, 399, 495 P.2d 327 (1972); *In re Ferguson*, 41 Wn. App. 1, 4, 701 P.2d 513 (1985). We therefore decline to address Schons's general allegations.

Moreover, upon a careful reading of the record below and a study of the provisions of the act, we are convinced that Schons's specific claims were properly denied.

I

LOSS OF MILK PRODUCTION

Schons claimed some $68,880 in damages for a 20 percent loss in milk production in his herd caused by the stress of the relocation on the cows. Although the hearing examiner determined that the reduction in production was attributable to numerous factors surrounding the relocation, he concluded that such a loss was not compensable under the act. In particular, the examiner found that loss of milk production was the equivalent of lost profits, which are specifically excluded from recompense by WAC 365-24-440(6).

Schons's compensation claim is based on the following provision of the relocation assistance act:

(1) Whenever the acquisition of real property for a program or project undertaken by the state or a local public body will result in the displacement of any person . . ., the acquiring agency shall make a payment to any displaced person, . . . for:

. . .

(b) Actual direct losses of *tangible personal property* as a result of moving or discontinuing a business or farm operation, *but not to exceed an amount equal to the reasonable expenses that would have been required to relocate such property,* . . .

(Italics ours.) RCW 8.26.040(1)(b).

Schons cites no authority for his contention that the loss of milk production qualifies as "tangible personal property." The last clause of the provision, however, which limits compensation in any event to the amount that would have been expended to relocate the property, demonstrates that the provision is directed to physical assets and not to such intangibles as a loss in production. One court, construing the same language in the federal uniform relocation assistance act and relying on federal legislative history, found that the purpose of the provision is to provide some

compensation for situations when the relocation of fixtures or machinery is impractical or uneconomical.[1] *See Robzen's, Inc. v. United States Dep't of Housing & Urban Dev.*, 515 F. Supp. 228 (M.D. Pa. 1981) (denying compensation under federal relocation assistance act for increased weight loss of cattle caused by longer transportation distance following relocation of slaughterhouse).

The limited purpose of RCW 8.26.040(1)(b) is further underscored by WAC 365-24-440(5) and (6), which designate loss of goodwill and loss of profit as nonallowable moving expenses under the act. As the hearing examiner correctly concluded, loss of milk production in a dairy herd is but another way to describe loss of gross income and loss of profit.[2] The hearing examiner's conclusion that lost milk production does not come within the benefits provided by RCW 8.26 is correct.

## II
### Dead Cow in Transit

■ One of Schons's cows was trampled to death during the move, for which damages of $1,400 were claimed. The carrier was not licensed or bonded. The hearing examiner denied compensation and concluded:

---

[1] "Payments for direct losses of property are allowed where a person who is displaced from his place of business or farm operation is entitled to relocate his property, but does not do so. *Typical items in the case of a business include equipment, machinery, or fixtures which are no longer required, where the business or farm operation is to be discontinued or the property is not suitable for use at the new location.* The relocation of old trade fixtures, machinery, or equipment frequently is impractical or uneconomical, if not impossible, and could be a deterrent to the successful re-establishment of a business." *Robzen's, Inc. v. United States Dep't of Housing & Urban Dev.*, 515 F. Supp. 228, 239 (M.D. Pa. 1981) (quoting House Public Works Committee).

[2] "Loss of production and loss of income are merely another manner of expressing lost profits which are specifically excluded for either a business or farm operation by [WAC 365-24-440(6)]. Such losses, being in the nature of consequential losses and relating to management rather than to elements inhering in the fair market value of the property itself, appear also to have been properly excluded from the award of just compensation originally entered in the eminent domain proceeding." Conclusion of law 8.

Payment for personal property such as livestock which is damaged during the move may be made pursuant to WAC 365-24-420 only under circumstances where insurance to cover such loss or damage is not available. When a displacee elects to move his personalty by a carrier, which is neither licensed nor bonded, then there can be no recovery for such losses.

Conclusion of law 6. Great deference is accorded an agency's interpretation of its own rules. *Washington State Employees Ass'n v. Cleary,* 86 Wn.2d 124, 129, 542 P.2d 1249 (1975).

WAC 365-24-420 ("Allowable moving expenses for displaced persons") provides reimbursement for:

(5) *Insurance premiums* covering loss and damage of personal property while in storage or transit.

. . .

(7) Property lost, stolen, or damaged (not caused by the fault or negligence of the displaced person, his agents, or employees) in the process of moving, *where insurance to cover such loss or damage is not available.*

(Italics ours.)

The purpose of these provisions is to relieve the State of the onerous burden of settling directly numerous claims for damages that will inevitably arise during relocations. By reimbursing displacees only for insurance premiums to cover damages to personal property and for damages that are not otherwise insurable, the State can manage a difficult situation in an efficient and cost-effective manner. To construe these provisions in the manner that Schons suggests, which would permit recovery whenever a displacee chooses an uninsured carrier for moving personal property, would negate both the plain language and purpose of the regulations.

The record indicates that Schons shipped the animal in question with a carrier who was neither bonded nor insured. Schons himself stated that insurance was generally available for this kind of situation. No other evidence in the record indicates, nor does Schons contend, that insurance was not available for damage to the cows in transit. The

hearing examiner's conclusion that Schons was not entitled to damages for the one dead cow was therefore proper.

## III
### EXCESSIVE CULLING RATE

Schons contends that no evidence in the record supports the trial court's finding that the cull rate for his dairy herd, *i.e.*, the routine replacement of nonproductive cows, did not exceed the normal rate in the year following the relocation. Schons claimed $32,500 in damages resulting from the alleged premature culling.

Some testimony was presented to the hearing examiner regarding Schons's claim that his herd suffered an excessive culling rate during the year following the relocation. The hearing examiner, apparently inadvertently, entered no findings or conclusions on this matter. At the request or acquiescence of counsel when the case was appealed to the superior court, the judge entered the following findings of fact, based on the testimony presented at the administrative hearing:

> [T]he extent to which the appellant culled the dairy cows from his herd did not exceed a normal cull rate for the year following the move; and further, that the specific cause for the culling of the cows that were culled was not established by the evidence.

Appellate review of administrative findings is conducted under the "clearly erroneous" and "arbitrary and capricious" standards. *Eggert v. Department of Empl. Sec.*, 16 Wn. App. 811, 813, 558 P.2d 1368 (1976). Schons himself testified that a total of 193 producing cows were relocated and that he had to replace 25 culled cows. Schons also testified that the normal cull rate would be approximately 20 to 25 percent, which would result in the culling of 39 to 48 cows. Schons's own testimony would therefore support a finding that the cull rate following the relocation was *less* than normal. In addition, no testimony was presented regarding the cause for the culling of the 25 cows. The trial court's findings are therefore supported and not arbitrary.

In summary, we find Schons's contentions to be without merit. The decision of the trial court is affirmed.

SCHOLFIELD, A.C.J., and COLEMAN, J., concur.

Review denied by Supreme Court February 21, 1986.