[No. 10715-5-II. Division Two. October 12, 1988.]

THE STATE OF WASHINGTON, *Appellant,* v. JOHN SCOTT KELLEY, *Respondent.*

582

*Arthur D. Curtis, Prosecuting Attorney,* and *Richard A. Melnick, Deputy,* for appellant.

*Steven W. Thayer,* for respondent.

ALEXANDER, J.—The State of Washington appeals orders of the Clark County Superior Court suppressing evidence, and dismissing charges against John Scott Kelley. The State contends that the trial court erred in concluding that (1) a search of Kelley's outbuildings was beyond the scope of a search warrant authorizing a search of Kelley's home; and (2) probable cause did not exist to justify issuance of the warrant to search Kelley's house. In addition, the State contends that the evidence seized should not have been excluded, in any event, because the officers acted in "good faith" in executing the search warrant. Kelley cross–appeals, claiming that the trial court erred in concluding that there was probable cause to issue a warrant to search certain of Kelley's outbuildings.

We affirm the trial court's suppression of the evidence as well as its dismissal of the information. Consequently, we find it unnecessary to deal with the issues raised in Kelley's cross appeal.

Charles Christensen, a Clark County Deputy Sheriff, submitted his affidavit for a search warrant to a Clark County District Court Judge. He alleged in his affidavit that marijuana, as well as controlled substances paraphernalia, were being unlawfully possessed at Kelley's residence and outbuildings. The outbuildings consisted of an unattached garage, a larger 4–car garage, and a barn adjacent to the home.

Christensen disclosed, more specifically, that two citizens had advised him that they had visited Kelley's premises at an earlier time and that they had observed that Kelley had put up a padlocked metal gate at the residence. In addition, these informants told Christensen that they observed that (1) the 4–car garage had been boarded up and padlocked; (2) the barn was padlocked; (3) plastic sheeting was inside both buildings, covering all cracks in the doorways; and (4) two vents had been added to the garage. They told the officer that on one occasion they were met by two doberman pinscher dogs. One of the citizen informants told Christensen that he had heard a noise of an exhaust fan and the "humming" of halide lights emanating from within the garage. This informant also said that he observed in the garage a large pile of rich looking dirt covered by plastic sheeting.

Christensen disclosed that his investigation revealed that neither Kelley, nor the woman residing with him, had prior drug convictions. He indicated also that he and another officer investigated the property several times[1] and confirmed that sounds of exhaust came from within the garage. The officers observed that five vents had been installed in the roof of the garage and that two vents were located on

[1]The officers observed Kelley's property from property adjacent to the defendant's property.

the east side of the building. Twice, using an infrared viewer, the two officers determined that a large amount of heat was coming out of the various vents in the garage.

Finally, Christensen alleged that he learned from the Clark County PUD that there were substantial differences in the amount of power consumed on the subject premises from month to month. In particular, he learned that a substantial decrease in power usage occurred between May 16, 1986, and July 16, 1986. Christensen indicated that a "credit specialist" with the PUD opined that power was being illegally diverted at the Kelley residence.

Based on the information in Christensen's affidavit, the District Court Judge issued a warrant authorizing the search of Kelley's "one story, wood framed residence, green in color, with an attached carport bearing the specific address of . . ." Deputies from the Clark County Sheriff's Department executed the warrant and seized marijuana and paraphernalia from Kelley's residence as well as from outbuildings that were not described in the warrant. Kelley was subsequently charged with (1) unlawfully manufacturing a controlled substance, (2) possession of a controlled substance with intent to deliver, (3) possession of a controlled substance, and (4) unlawfully obtaining electric utility services.

Kelley moved, pursuant to CrR 2.3(e), to suppress all of the evidence that had been seized from his house and outbuildings. The trial court granted the motion, concluding that (1) although probable cause existed to search the outbuildings, the search of the buildings was beyond the scope of the search warrant, and (2) that probable cause did not exist to justify issuance of a warrant to search the home. Based on the suppression of the evidence, the trial court dismissed all of the charges against Kelley.

I

SCOPE OF THE WARRANT

The State first contends that the trial court erred in suppressing the evidence discovered in the outbuildings. We

disagree, concluding that the trial court properly ruled that the search of the outbuildings was outside the scope of the search warrant which indicated only that the house and carport were to be searched.

Pursuant to the fourth amendment to the United States Constitution, an officer must execute a search warrant strictly within the bounds set by the warrant. *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 394, 29 L. Ed. 2d 619, 91 S. Ct. 1999, 2004 n.7 (1971).

Generally "[a] warrant is sufficiently particular if it identifies the place to be searched adequately enough so that the officer executing the warrant can, with reasonable care, identify the place intended." *State v. Cockrell,* 102 Wn.2d 561, 569–70, 689 P.2d 32 (1984). A perfect description is not required. *State v. Smith,* 39 Wn. App. 642, 648, 694 P.2d 660 (1984), *review denied,* 103 Wn.2d 1034 (1985). Any generality in the warrant may be cured for purposes of sustaining the particularity of the premises to be searched if, "a) the affidavit accompanies the warrant, and b) the warrant uses suitable words of reference which incorporate the affidavit therein." *In re Property Belonging to Talk of the Town Bookstore, Inc.,* 644 F.2d 1317, 1319 (9th Cir. 1981) (quoting *United States v. Johnson,* 541 F.2d 1311, 1315 (8th Cir. 1976) (per curiam)). In *Property Belonging to Talk of the Town Bookstore,* the warrant authorized officers to "seize only the above specified property *as described in the Affidavits attached to this search warrant*". (Italics ours.) 644 F.2d at 1319.

In *State v. Smith, supra,* the court observed that although a warrant stated the address to be searched as 8415 Carl Road, Sumas, Washington, instead of the actual address of 8415 Carl Road, Everson, Washington, the officer was familiar with the area and had been shown a "rough sketch map." The officer also had been given a detailed explanation how to get to the property. *Smith,* 39 Wn. App. at 648. The court held that even though the address was incorrect, it was proper to consider the officer's personal

knowledge of the location of the property. *Smith*, 39 Wn. App. at 649.

However, in *State v. Niedergang*, 43 Wn. App. 656, 719 P.2d 576 (1986), the court held that where a warrant authorized the search of the residence and curtilage, a search of the defendant's car, parked in an open area in front of the residence, was not lawful because it was not within the curtilage. Consequently, it concluded that the search exceeded the scope of the warrant. *Niedergang*, 43 Wn. App. at 657, 662.

█ We believe this case is similar to *Niedergang*. Here, the warrant neither referred to the outbuildings nor incorporated by reference the affidavit, which did refer to the outbuildings. Furthermore, this case did not involve a mistaken address or a lack of specificity about the contents of the warrant. Rather, the warrant authorized a search of the house, and the attached carport, only. The warrant made no mention of other buildings not attached to the house. Consequently, when the officers searched the barn and the garage, they clearly exceeded the bounds of the search warrant.

## II
### PROBABLE CAUSE TO SEARCH THE HOUSE

█ The State contends that the trial court erred in concluding that probable cause did not exist to justify the issuance of the search warrant for the house. We disagree. All of the information contained in Christensen's affidavit related to observations about the outbuildings. Christensen presented no information which furnished probable cause for a search of the house.

█ The State makes an additional argument that because the probable cause existed to search the outbuildings, it follows that probable cause existed to search the house. It reasons that given the information known about the outbuildings, it follows that the house probably would have contained information relating to the identity of the occupant of the outbuildings or materials used in the manufacturing or distribution of controlled substances. The

State has not cited any authority for the proposition that probable cause for a search of the house can be inferred from the fact that such materials may be found in the outbuildings. We need not consider an argument which is not supported by citation to authority. *Schons v. Department of Transp.*, 43 Wn. App. 160, 162, 715 P.2d 1142 (1985), *review denied*, 105 Wn.2d 1011 (1986).

## III
### GOOD FAITH EXCEPTION

The State next argues that even if the warrant did not authorize the search of the outbuildings, the search of those buildings should be upheld because the officers acted in "good faith" in executing the warrant. The State relies on *United States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984) and *Massachusetts v. Sheppard*, 468 U.S. 981, 82 L. Ed. 2d 737, 104 S. Ct. 3424 (1984). In *Leon*, the Court indicated that the so-called "exclusionary rule" would not apply where a police officer conducted a search of premises under authority of a search warrant later found to be unsupported by probable cause, if the officer had reasonable grounds to believe the warrant was properly issued. In *Sheppard*, the Court held that the exclusionary rule would not apply in a case in which the officers had an objectively reasonable belief that their search was authorized by a valid warrant. *Sheppard*, 104 S. Ct. at 3427.

 Even if we assume that evidence seized in a "good faith" search would survive a motion to suppress under article 1, section 7 of the Washington Constitution,[2] we do not believe that under the facts of this case, the good faith rule applies. In our judgment, a search of buildings which are not described in the warrant is not a search made in good faith in reliance on the warrant.

---

[2]The Washington Supreme Court has not yet decided whether the "good faith" rule would apply under the Washington State Constitution. *See State v. Huft*, 106 Wn.2d 206, 212, 720 P.2d 838 (1986).

The State also attempts to justify the search of the residence under the "good faith" exception. Its argument fails, however, because the deputies cannot claim that they had reasonable grounds to believe that the warrant justified the search of the house, when the information supplied to the magistrate by one of the deputies did not even mention the house.

Because the trial court correctly concluded that all of the evidence seized from Kelley's home and outbuildings should be suppressed, we need not consider Kelley's cross appeal.

We affirm.

PETRICH, J., concurs.

REED, C.J. (concurring)—I concur but am constrained to add that, except for the apparent theft of electricity, all of the activity observed by the informants is consistent with perfectly lawful activity. The defendant could just as well have been growing orchids. In cases finding probable cause in similar circumstances, additional information points to drug involvement. Here, there was no such corroboration. Hence, in my opinion, no probable cause—for a search of even the outbuildings.