[No. 19278-1-II.   Division Two.   June 20, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. ELDEN S. GEBAROFF, JR., *Appellant*.

*John L. Farra,* for appellant (appointed counsel for appeal).

*H. Steward Menefee, Prosecuting Attorney,* and *Jason S. Richards, Deputy,* for respondent.

HOUGHTON, C.J. — Elden S. Gebaroff, Jr. was convicted on stipulated facts of possessing methamphetamine and heroin. He appeals the trial court's denial of a pretrial motion to suppress evidence, contending that a search warrant lacked probable cause for issuance. We agree and reverse.

On September 2, 1994, a Grays Harbor district court judge issued a warrant to search the following:

> (1) Bluish white in color dirty single wide mobile home located at 45 Sudderth Rd., Hoquiam. Owned by Rodney Turney and Wendy Peterson. The mobile home is approx. 100 feet south of Sudderth Rd. To include outbuildings and the three recreational travel trailers located to the rear of the mobile home.

> (2) Green Chevrolet pickup with a small hoist attached to the bed of the pickup.

> (3) Blue Chevrolet pickup.

> (4) The person of Elden Sanford Gebaroff Jr. [description follows, including nickname, "Sandy"].

> (5) Any and all other buildings or structures on the property located at 45 Sudderth Rd. Hoquiam Wa.

The warrant was based upon an affidavit of Detective Edward McGowan, who in turn relied upon information provided by a confidential informant.

Gebaroff contends that (1) the warrant did not issue upon probable cause because McGowan's affidavit fails to establish the credibility of the informant; specifically, how the informant knew that contraband could be found in the travel trailers outside the mobile home; and (2) even if the information was credible, the affidavit did not contain

facts sufficient to permit a search of the travel trailers in addition to the mobile home. Gebaroff relies on both the federal Fourth Amendment and on article 1, section 7 of the Washington Constitution.

■ The trial court entered findings of fact in support of its denial of the suppression motion, to which Gebaroff assigns error. But as the findings do not completely address these issues, we will review the officer's affidavit as well.

We summarize the affidavit in pertinent part: On September 1, 1994, Detective McGowan met with Sergeant Clarkson of the Aberdeen police to interview a confidential informant (CI) who had proven reliable while working with the Westport police, making controlled buys for them and providing truthful information about violations of the Controlled Substances Act. The CI said that he had bought methamphetamine from a residence on Walker Bottom Road, "[n]ear Humptulips," on August 30, 1994. It was the third time he had done so. These were not controlled buys, and the information was against the CI's penal interest. The CI said that a clandestine methamphetamine lab was located on the property in a small travel trailer at the rear of the main mobile home. The CI did not say how he knew the methamphetamine lab's exact location, however. The CI said that the methamphetamine "cook" was a white male, six feet one to six feet three inches tall, with "blondish" hair and a full, graying beard.

The CI described the purchase on August 30. He said that he and his girlfriend had taken the bus from Aberdeen, getting off at the Red Rooster Tavern and walking nearly two miles from Highway 101 down the Walker Bottom Road to the second road on the left, then a quarter mile to the fourth driveway, then left up the driveway to a mobile home. He gave his girlfriend $100. She knocked on the door and was greeted by a tall, slender woman in her thirties, said to resemble "Olive Oyle from the Popeye movie." The CI's methamphetamine supplier was described as a white male, age 56 or 57, with long hair, a gray beard, and several tattoos. A man named "Sandy"

was watching television in the living room; the affidavit implies that "Sandy" was the supplier thus described. Sandy told the woman, his girlfriend, to "get them what they want [ ]," whereupon she went into "the other room off of the living room," returning a short while later with a baggie containing methamphetamine. The CI told McGowan that the methamphetamine was "so fresh it was still wet."

As they were about to leave, the CI saw Sandy make a telephone call, then yell out the window that someone needed a delivery at the Red Rooster. The CI saw the man he knew as the "cook" drive away in a pickup truck. The CI and his girlfriend walked back to the Red Rooster, where they saw the cook conversing with a log truck driver. They took the bus back to Aberdeen, where the CI had to freeze the damp methamphetamine before he could resell it. The CI said that he had been involved in the sale and distribution of methamphetamine since he was 17 years old and "knows what methamphetamine is from his experience using and selling the drug."

McGowan further related that the sergeant talked with the CI's girlfriend, who confirmed details of their visit to the residence on Walker Bottom Road to buy methamphetamine. Then McGowan averred that the Grays Harbor County Drug Task Force had received numerous tips, some anonymous, about a methamphetamine lab at the Rod Turney residence on the Walker Bottom Road. McGowan also described a prior investigation in 1993, in which Gilbert Newman, Douglas Wyeth, and Elden "Sandy" Gebaroff were suspects. The police had searched Newman's residence at 301 Walker Bottom Road at that time. McGowan also knew that Rod Turney and Wendy Peterson own property at 45 Sudderth Road, Humptulips — the same address as on Gebaroff's driver's license. Turney and Peterson are known associates of Gilbert Newman. Gebaroff's physical description matches the CI's description of "Sandy."

Gebaroff first contends that the warrant lacked

probable cause. We agree. "[N]o warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. 4. *See State v. Riley,* 121 Wn.2d 22, 28, 846 P.2d 1365 (1993). A magistrate asked to issue a search warrant is entitled to draw reasonable inferences from the facts and circumstances related, *State v. Maffeo,* 31 Wn. App. 198, 200, 642 P.2d 404 (1982), and the question of probable cause to issue a search warrant should not be viewed in a hypertechnical manner, *State v. Remboldt,* 64 Wn. App. 505, 510, 827 P.2d 282 (1992), but reasonably and with common sense, resolving doubts in favor of the warrant. *State v. Young,* 123 Wn.2d 173, 195, 867 P.2d 593 (1994).

Fatally absent from McGowan's affidavit is any explicit connection of the CI's drug purchase to the property authorized to be searched: 45 Sudderth Road in Hoquiam. We can discern that the CI traveled some distance along Highway 101 to the Red Rooster and walked nearly two miles down the Walker Bottom Road to another, unnamed road, where he turned left and proceeded to a mobile home. We can tell that the CI's source at that location was a man called "Sandy," who may be Elden Gebaroff, and that a woman and a "cook," both unnamed, were also there. We know that Gilbert Newman owns property at 301 Walker Bottom Road, that Newman is a reported methamphetamine maker, and that Rod Turney and Wendy Peterson own property at 45 Sudderth Road, Humptulips, and are alleged associates of Newman's. But, crucially, nothing in the affidavit tells us or permits us to infer that the address where the CI made his purchase was 45 Sudderth Road (or even that the address is in Hoquiam as stated on the warrant, rather than Humptulips as stated in the affidavit; or that the woman and the "cook" were Peterson and Turney).[1] Thus, the warrant was not based upon probable cause to search those particular premises.

---

[1]Although the CI said that "Sandy" was watching television in the mobile home's living room, and he described the "cook" as another man who left to

Gebaroff contends, additionally, that even if the mobile home could be searched, nothing in the affidavit provides probable cause to search the travel trailers behind the mobile home. The record indicates that one of the trailers was Gebaroff's residence, with a sewer pipe hooked up to it, and that he manufactured "crank," or methamphetamine, inside it; another suspect, Wagner, lived in a combination of "vehicles, vans, and a trailer" elsewhere on the rural property. Gebaroff described his residence as an "abandoned trailer." The trial court found that Gebaroff's trailer was his residence. Therefore, we treat it as a residential outbuilding rather than as a vehicle.[2]

■ Judges looking for probable cause in an affidavit may draw reasonable inferences about where evidence is likely to be kept, including nearby land and buildings under the defendant's control. *See United States v. Bertrand,* 926 F.2d 838, 841-42 (9th Cir. 1991); *United States v. Roberts,* 747 F.2d 537, 545 (9th Cir. 1984). In this case, however, the mobile home and the travel trailers were not under the same person's control. We agree with Gebaroff that the warrant authorizes a search of his trailer without any supporting facts in the affidavit; the affidavit does not mention the trailer except to request a search of it.

We considered a variant of this issue in *State v. Kelley,* 52 Wn. App. 581, 762 P.2d 20 (1988). The warrant in *Kelley* authorized the search of a residence with attached carport, but the police searched some outbuildings as well. *Kelley,* 52 Wn. App. at 584. We noted in *Kelley* the general

---

make a delivery at the Red Rooster, a drug task force follow-up report indicates that "Sandy" was the methamphetamine "cook" who lived in a trailer out back, while Rod Turney and Wendy Peterson occupied the mobile home. This seeming confusion of persons is largely irrelevant; however, the affidavit is deficient because it fails to establish a link between the CI's drug purchase at the mobile home out the Walker Bottom Road, and the address authorized to be searched.

[2]The distinction between outbuildings and vehicles can be important. Police having authority to search a residence for evidence of illegal drugs also have authority to search vehicles associated with the suspect and located on the premises. *See State v. Claflin,* 38 Wn. App. 847, 853, 690 P.2d 1186 (1984). *But see* 2 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 4.5(d), at 539 (3d ed. 1996) ("evidence [must tend] to show that vehicles on the premises were likely places of concealment for the items to be seized.").

principles that the police must execute a search warrant strictly within the bounds set by the warrant, and that a warrant describes a place with sufficient particularity " 'if it identifies the place to be searched adequately enough so that the officer executing the warrant can, with reasonable care, identify the place intended,' " *Kelley,* 52 Wn. App. 585 (quoting *State v. Cockrell,* 102 Wn.2d 561, 569-70, 689 P.2d 32 (1984)). Moreover, if a warrant authorizes the search of a house without mentioning outbuildings, either in the warrant itself or by incorporating such a reference in the affidavit, a search of the outbuildings is outside the scope. *Kelley,* 52 Wn. App. at 585-86.

A corollary to this rule, which applies here, is that probable cause to search outbuildings does not furnish probable cause to search a house — and vice versa, if the outbuildings are under the control of other persons. *See Kelley,* 52 Wn. App. at 586-87. Thus, even if probable cause had existed for a search of the main residence, it did not exist for the search of Gebaroff's separately occupied trailer.

Reversed.

SEINFELD and ARMSTRONG, JJ., concur.