[No. 24077-3-I.   Division One.   December 3, 1990.]

THE STATE OF WASHINGTON, *Appellant,* v. FRANK PERRONE, *Respondent.*

*Norm Maleng, Prosecuting Attorney,* and *Timothy M. Blood, Deputy,* for appellant.

*Timothy K. Ford, Katrin E. Frank,* and *MacDonald, Hoague & Bayless,* for respondent.

COLEMAN, C.J.—Frank Perrone was charged with the crimes of dealing in depictions of a minor engaged in sexually explicit conduct (RCW 9.68A.050) and possession of depictions of a minor engaged in sexually explicit conduct (RCW 9.68A.070). The trial court granted Perrone's pretrial motion to suppress the evidence seized from his residence which formed the basis for the charges against him. The State of Washington appeals from the trial court's order granting Perrone's motion, claiming that the trial court erred by failing to sever certain valid portions of the warrant from the invalid portions and that the trial court erred by failing to hold that the language in the search warrant authorizing the seizure of depictions of "children . . . engaged in sexual activities" was sufficiently particular. We reverse.

The trial court's findings of fact, entered following the suppression hearing, establish the following sequence of events. On September 6, 1988, Frank Perrone delivered 82 films to William Grijalva, an undercover police officer, in Oakland, California. Several of the films contained children involved in sexually explicit acts. Perrone indicated to Officer Grijalva that he had more films "like those" back in Seattle and that he shared his films with other "collectors."

When asked if he had any VHS cassettes of "kiddie porn" that Grijalva could copy, Perrone responded that he had enough VHS cassettes in his California and Seattle "library" to keep Grijalva busy for a lifetime. Officer Grijalva subsequently obtained a warrant to search Perrone's residence in California. Grijalva executed an affidavit in support of the warrant in which he stated that he and Officer Frazier had viewed 17 of the 82 films seized. Grijalva provided a description of 10 films which he believed violated the law. Five contained child pornography and the other five contained bestiality.[1] The ages of the children in the films ranged from 11 to 16. The affidavit was attached to the application for a warrant to search Perrone's residence in California.

Based upon Grijalva's contacts with Perrone, Seattle Police Officer Carolee Edwards obtained a search warrant from Judge Ron Mamiya for Perrone's Seattle residence. Edwards attached Officer Grijalva's affidavit to her application for the search warrant.[2] The search warrant authorized seizure of the following items:

> Child or adult pornography; photographs, movies, slides, video tapes, magazines or drawings of children or adults engaged in sexual activities or sexually suggestive poses; correspondence with other persons interested in child pornography, phone books, phone registers, correspondence or papers with names, addresses, phone numbers which tend to identify any juvenile; camera equipment, video equipment, sexual paraphernalia: records of safe deposit boxes, storage facilities; computer hardware and software used to store mailing list information or other information on juveniles; papers of dominion and control establishing the identity of the person in

---

[1]The child pornography films included masturbation, oral copulation, intercourse, and anal intercourse among juveniles, and intercourse between an adult male and a female juvenile. The bestiality films involved masturbation, oral copulation, and intercourse with dogs, pigs, and horses.

[2]Whether Judge Mamiya considered all of the materials placed before him in determining whether there was probable cause to issue the warrant to search Perrone's residence was a disputed fact. In its oral opinion, however, the trial court found that Judge Mamiya did consider all of the material in exhibit 24, which included Officer Grijalva's affidavit.

control of the premise; and correspondence or papers which tend to identify other pedophiles.

During the search the officers discovered 197 films, projection equipment, and numerous magazines and books. A review of 86 of the films indicated that some of them depicted children under the age of 16 involved in sexual conduct, including acts of sexual intercourse. In addition, 12 of the magazines seized depicted minors in various sexual acts such as masturbation, fellatio, and sexually explicit poses.

On October 12, 1988, Perrone was charged with the crimes of dealing in depictions of a minor engaged in sexually explicit conduct in violation of RCW 9.68A.050(2)[3] and possession of visual or printed matter depicting a minor engaged in sexually explicit conduct in violation of RCW 9.68A.070.[4] Prior to trial, the court granted Perrone's motion to suppress the evidence seized from his residence. The trial court concluded that the affidavits in support of the search warrant provided probable cause for the seizure of child pornography. However, the trial court noted in its conclusions of law as follows:

1. The warrant goes beyond the scope of probable cause established by the affidavits and the materials submitted with it. The materials submitted provide no probable cause for the seizure of adult pornography, drawings of children, and some of the other items described in the warrant.

2. The warrant was overbroad in that it authorized the seizure of lawful material, and material for which there was no probable cause to search.

3. Certain terms in the warrant were undefined and unclear, and could be interpreted in different ways by different people. Particularly, reasonable persons could interpret the word "children" to mean persons as old as the age of eighteen, and the

---

[3]RCW 9.68A.050(2) provides that a person who "[p]ossesses with intent to develop, duplicate, publish, print, disseminate, exchange, or sell any visual or printed matter that depicts a minor engaged in an act of sexually explicit conduct is guilty of a class C felony . . .".

[4]Former RCW 9.68A.070 provides that "[a] person who knowingly possesses visual or printed matter depicting a minor engaged in sexually explicit conduct is guilty of a gross misdemeanor."

phrase "sexually suggestive positions" to encompass a broad variety of perfectly legal depictions of children and adults.

4. The warrant granted discretion to the officer to determine which items within the described categories should be seized. There is no way to subdivide out any portion of the warrant which could be found to have given the officers the specific guidance required by the Constitution.

5. The search warrant was therefore invalid in its totality and all the items seized under it must be suppressed.

The trial court's ruling effectively precluded the State from prosecuting Perrone. This appeal followed.

The State concedes that the affidavit in support of the search warrant did not provide probable cause for the seizure of adult pornography, pornographic drawings, sexual paraphernalia, or correspondence or papers which tend to identify other pedophiles. Appellant further concedes that the warrant's language authorizing the seizure of depictions of children engaged in "sexually suggestive poses" was insufficiently particular. However, appellant contends that the trial court erred by not severing the invalid portions of the warrant from those portions which are valid. Specifically, appellant contends that the portion of the warrant authorizing the seizure of depictions of "children . . . engaged in sexual activities" was valid.

The general rule in Washington is that if a warrant separately and distinctly describes more than one target and thereafter it is determined that probable cause existed for issuance of the warrant as to one but not the other items, the warrant may be treated as severable and upheld as to the one target only. *State v. Halverson,* 21 Wn. App. 35, 37, 584 P.2d 408 (1978); *State v. Cockrell,* 102 Wn.2d 561, 570–71, 689 P.2d 32 (1984).

In *Cockrell,* a warrant was issued for the search of the defendants' property and all persons, vehicles, and buildings in the area. The trial court concluded that the affidavit in support of the search warrant was insufficient to establish probable cause to search the defendants' residence, outbuildings, vehicles, and any persons on the property. *Cockrell,* at 569. On appeal the defendants' contention that

the affidavit failed to establish whether any of the marijuana gardens were on their property was rejected. The defendants' final contention that the invalid portions of the warrant were not severable from the valid portions was also rejected. The Supreme Court held that although insufficient probable cause existed to search certain buildings or persons on the defendants' property, that defect did not invalidate the portion of the search warrant which was valid. *Cockrell,* at 571.

In support of its conclusion, the *Cockrell* court cited with approval *Aday v. Superior Court,* 55 Cal. 2d 789, 362 P.2d 47, 13 Cal. Rptr. 415 (1961). *Cockrell,* at 570. In *Aday,* a warrant was issued for two named books and 19 categories of property such as checks, sales records, customers' correspondence and orders, invoices, bills, vouchers, mailing lists, articles of incorporation, minutes of the board of directors, stockholder records, and "'[a]ny and all other records and paraphernalia connected with'" the business of the corporate petitioners. *Aday,* at 793.

In response to a challenge to the validity of the warrant, the court held that aside from the naming of the two books, the remaining categories when taken together were so sweeping as to include virtually all personal business property on the premises and placed no meaningful restriction on the things to be seized. The court reasoned that such a warrant was similar to the general warrant permitting unlimited search, which had long been condemned. Thus, the court held that the warrant did not constitute legal authorization to search for and seize the articles that were insufficiently described. *Aday,* at 796.

The court went on to hold, however, that "[t]he invalid portions of the warrant are severable from the authorization relating to the named books, which formed the principal basis of the charge of obscenity." *Aday,* at 797. The court concluded that the "search for and seizure of these books, if otherwise valid, were not rendered illegal by the defects concerning other articles." *Aday,* at 797.

Read together, *Cockrell* and *Aday* support the proposition that valid portions of the search warrant challenged here may be severed from the invalid portions. The trial court held that there was probable cause to search respondent's Seattle residence for child pornography. A reading of the affidavit and the warrant unmistakably indicate that child pornography was the primary target of the warrant. Under these circumstances, it is irrelevant that a substantial portion of the warrant was invalid. That was precisely the situation in *Aday* where the court upheld the validity of the warrant based upon the fact that the remaining portion was not defective.

The dissent, relying upon *Aday,* argues that the severance doctrine should not be applied when a wholesale seizure is made under a warrant which is essentially general in character, but is sufficiently particular as to minor items. Dissent, at 699. In this case, however, we are not confronted with a general warrant that was particular as to only minor items. Child pornography clearly was the primary target of the warrant. The significant deficiency of the warrant was not its lack of particularity, but rather that there was no probable cause to seize many of the things described in the warrant.

The dissent further opines that suppressing evidence that was invalidly seized is like locking the proverbial barn door after the horse is stolen. The remedy of suppression, however, always is imposed after the damage has been done.

Respondent contends that even if the invalid portions of the warrant could be severed, the language of the remaining portion "children . . . engaged in sexual activities" is too general to satisfy the requirements of the Fourth Amendment. Respondent relies upon *United States v. Hale,* 784 F.2d 1465 (9th Cir.), *cert. denied,* 479 U.S. 829, 93 L. Ed. 2d 59, 107 S. Ct. 110 (1986) in support of his argument. In *Hale,* United States Customs officials intercepted envelopes

addressed to Hale that contained a magazine and photographs which depicted minors engaged in sexually explicit conduct.

A search warrant was issued and executed after the United States Postal Service delivered the materials to Hale. The warrant authorized a search of Hale's home for the specific magazine and photographs discovered by Customs officials, along with "any other books, magazines, photographs, negatives, or films depicting obscene, lewd, lascivious, or indecent sexual conduct". *Hale,* at 1468. The *Hale* court upheld the first part of the warrant, but concluded that the second part of the warrant was "too general to support the seizure of material that was, at the time of the seizure, arguably protected by the First Amendment." *Hale,* at 1469.

We agree that the language in the warrant in *Hale* was not sufficiently particular and therefore was invalid. The case before us, however, more closely resembles *United States v. Hurt,* 795 F.2d 765 (9th Cir. 1986), *modified,* 808 F.2d 707 (9th Cir.), *cert. denied,* 484 U.S. 816, 98 L. Ed. 2d 33, 108 S. Ct. 69 (1987). In *Hurt,* the warrant authorized the seizure of any materials depicting minors engaged in sexually explicit conduct. *Hurt,* at 768. The court disagreed that the description of the items to be seized was very similar to the description found invalid in *Hale. Hurt,* at 708. The *Hurt* court found *Hale* to be "clearly distinguishable" and held that the warrant before it particularly described the material to be seized. *Hurt,* at 708. Unlike *Hale,* in which the officers were directed to seize anything they considered to be "obscene, lewd, lascivious, or indecent" sexual conduct, the police officers in *Hurt* were specifically commanded to search for material depicting minors engaged in sexually explicit activity. The court found that this language sufficiently circumscribed the officers' discretion at the time of the seizure. *Hurt,* 808 F.2d at 708.

Perrone attempts to distinguish *Hurt* on the basis that the warrant incorporated statutory language, *i.e.,* minors (persons under the age of 16) engaged in sexually

explicit conduct, and cited the statute by number. Incorporation of statutory language, however, was not a part of the court's reasoning. The court upheld the warrant because

[t]he words used in the warrant to describe the material sought need no expert training or experience to clarify and limit their meaning. Any rational adult person can recognize sexually explicit *conduct* engaged in by children under the age of 16 when he sees it.

*Hurt,* 808 F.2d at 708.

Applying the reasoning in *Hurt* to the facts of our case, the portion of the warrant which authorized a search for "photographs, movies, slides, video tapes, [and] magazines . . . of children . . . engaged in sexual activities . . ." should have been upheld. Any rational adult person can recognize materials of children engaged in "sexual activities" without the aid of expert training or experience to clarify and limit their meaning.

The dissent argues that the direction to seize materials that show "children . . . engaged in sexual activities" is "too loose a phrase to give clear guidance to the officer." Dissent, at 701. It is apparent, the dissent claims, that the officers "had no idea what materials could properly be seized as evidence of the crime involved." Dissent, at 702. The implication is that improper material was seized only because the language of the warrant was not sufficiently particular. As stated above, however, most of the material that should not have been seized was improperly seized because there was no probable cause to seize it. Clearly, there was probable cause to seize material that depicted children engaged in sexual activity.

The dissent further claims, however, that the statute proscribes possession of materials depicting children engaged in sexually explicit conduct, not materials depicting children engaged in sexual activity. It implies that with the warrant as written, the officers might believe that they could seize a picture of "scantily clad youths embracing on a couch", although possession of such a picture is not proscribed by the statute. Dissent, at 701. Thus, the dissent

argues that the warrant did not sufficiently circumscribe the officers' discretion.

We question whether a picture of "scantily clad youths embracing on a couch", without more, is a depiction of sexual activity, within the clear context of the warrant and the supporting affidavit.[5] However, even if we were to agree that the phrase used in the warrant was arguably too broad, this situation is analogous to cases in which statutes that are slightly overbroad have been upheld. A statute is not constitutionally overbroad when its "legitimate reach dwarfs its arguably impermissible applications." *See New York v. Ferber*, 458 U.S. 747, 773, 73 L. Ed. 2d 1113, 102 S. Ct. 3348 (1982).

Similarly, items seized under a warrant, the legitimate sweep of which dwarfs its arguably impermissible applications, should not be suppressed. "[T]he requirement of 'particularity' is governed by the rules of practicality, necessity and common sense." *State v. Withers*, 8 Wn. App. 123, 126, 504 P.2d 1151 (1972). Just as "[a]ny rational adult person can recognize sexually explicit *conduct* engaged in by children under the age of 16 when he sees it", *Hurt*, 808 F.2d at 708, any rational adult person would recognize that a picture of children merely embracing is not proscribed by any law and, hence, could not be seized under a warrant of which the focus is child pornography.

Furthermore, the fact that the warrant used the word "children" rather than the statutory term "minor" does not defeat the validity of the warrant.[6] The trial court concluded that the term "children" was unclear and could be interpreted to mean persons as old as the age of 18. We

---

[5]Such a depiction would be proscribed by the statute if the embrace involved touching of the "genitals, pubic area, buttocks, or breast area". *See* RCW 9.68A-.011(3)(g).

[6]At the time the search warrant was issued, RCW 9.68A.050 and RCW 9.68A-.090 defined "minor" as a person under 16 years of age. Under the statute *as it presently reads*, those definitions have been deleted and minor is defined in the definition section (RCW 9.68A.011) as any person under 18 years of age.

disagree. Construed reasonably, "children" refers only to persons who have yet to reach puberty and, thus, are less than 16 years old. *See American Heritage Dictionary* 265 (2d ed. 1982) (defining "child" as "[a] person between birth and puberty"); Black's Law Dictionary 217 (5th ed. 1979) (defining "child" "[a]t common law [as] one who had not attained the age of fourteen years"). "Common sense suggests that most of the time one can tell the difference between a child and an adult." *United States v. Wiegand,* 812 F.2d 1239, 1243 (9th Cir.), *cert. denied,* 484 U.S. 856, 98 L. Ed. 2d 118, 108 S. Ct. 164 (1987).

In conclusion, the trial court erred by holding that "photographs, movies, slides, video tapes, [and] magazines . . . of children . . . engaged in sexual activities . . ." could not be severed from the invalid portions of the warrant.

The order of the trial court is reversed and the cause is remanded for further proceedings.

WEBSTER, J., concurs.

FORREST, J. (dissenting)—The State concedes that of the 197 items seized from Mr. Perrone's library, approximately 94 percent were constitutionally protected under the First Amendment and seized in violation of the Fourth Amendment.[7] Likewise, of the broad range of items described in the search warrant only a few were properly subject to seizure, and even those were not described with particularity. The majority asserts "it is irrelevant that a substantial portion of the warrant was invalid." Majority, at 694. I dissent.

Not only is it relevant that the great preponderance of the warrant was invalid, but in this case it should be decisive. Once the impermissible portions are stricken from the warrant, not much remains:

---

[7]Article 1, section 7 of the Washington State Constitution provides more protection than does the Fourth Amendment, *State v. Stroud,* 106 Wn.2d 144, 720 P.2d 436 (1986), and may grant an independent basis, not addressed by this dissent, for finding the warrant defective.

Child or adult pornography; photographs, movies, slides, video tapes, magazines or drawings of children or adults engaged in sexual activities or sexually suggestive poses; correspondence with other persons interested in child pornography, phone books, phone registers, correspondence or papers with names, addresses, phone numbers which tend to identify any juvenile; camera equipment, video equipment, sexual paraphernalia; records of safe deposit boxes, storage facilities; computer hardware and software, used to store mailing list information or other information on juveniles; papers of dominion and control establishing the identity of the person in control of the premise; any correspondence or papers which tend to identify other pedophiles.

Some errors of overinclusion in search warrants are inevitable. I agree with the majority that it is usually appropriate and sufficient to sever and suppress the invalid portions of a warrant from what is constitutionally allowed. Search and seizure law is complex, information available to investigators is often uncertain, the police and magistrates err, and there are unavoidable differences of opinion over what constitutes "probable cause." However, there comes a point where the unconstitutional sweep of the warrant is so broad and the permissible portion is so minor in comparison that "the tainted part of the warrant so contaminate[s] the whole that the entire warrant must perish . . .." *People v. Mangialino*, 75 Misc. 2d 698, 348 N.Y.S.2d 327, 337 (1973). This is such a case.

To justify severing invalid sections of the warrant, the majority relies heavily on *Aday v. Superior Court*, 55 Cal. 2d 789, 362 P.2d 47, 13 Cal. Rptr. 415 (1961), but ignores the court's warning against excesses in the severance doctrine:

[T]he danger [is] that warrants might be obtained which are essentially general in character but as to minor items meet the requirement of particularity, and that wholesale seizures might be made under them, in the expectation that the seizure would in any event be upheld as to the property specified. Such an abuse of the warrant procedure, of course, could not be tolerated.

*Aday*, at 797. The warrant to search Perrone's library illustrates the precise risk recognized by the *Aday* court. Armed with a warrant to rummage through Mr. Perrone's library,

the police took full advantage, seizing 197 items of which the vast majority, although distasteful to most of society, were nonetheless protected under the First Amendment.

The Fourth Amendment has particular importance in the context of library searches. "[S]eizure of films or books on the basis of their content implicates First Amendment concerns not raised by other kinds of seizures." *New York v. P.J. Video, Inc.*, 475 U.S. 868, 873, 89 L. Ed. 2d 871, 106 S. Ct. 1610 (1986).[8] In this case, the warrant impermissibly included "drawings of children or adults engaged in . . . sexually suggestive poses", correspondence with other persons, phone books and phone registers, and adult pornography. But sexually explicit drawings, to take one example, are fully protected under the First Amendment whether they are considered artistic, scientific, or pornographic, and deserve protection from seizure.

Without vigorous protection from unlawful governmental seizure, items protected by the First Amendment may become subject to review by police, prosecuting attorneys, courts and even the press. This potential exposure of a person's private and legitimate library constitutes a serious invasion of constitutional rights, and may result in unwarranted embarrassment and damage to the person's reputation, besides inhibiting society's free exchange of ideas. Rummaging through Perrone's library and seizing 185 constitutionally protected items infringes upon his First Amendment rights. Suppression is like locking the proverbial stable door after the horse is stolen. Overly broad warrants in which a few minor items are legitimately included should not be tolerated.

---

[8]Justice Rehnquist also noted that "in *Lee Art Theatre, Inc.* v. *Virginia*, 392 U. S. 636 (1968), we held that a warrant authorizing the seizure of materials presumptively protected by the First Amendment may not issue based solely on the conclusory allegations of a police officer that the sought-after materials are obscene, but instead must be supported by affidavits setting forth specific facts in order that the issuing magistrate may 'focus searchingly on the question of obscenity.' *Marcus* [*v. Search Warrant*, 367 U.S. 717, 6 L. Ed. 2d 1127, 81 S. Ct. 1708 (1961)], at 732 . . .." *New York v. P.J. Video, Inc.*, at 873–74.

Furthermore, the little that remains of the original warrant as edited by the majority fails to meet the requirement for particularity. "'[T]he constitutional requirement that warrants must particularly describe the "things to be seized" is to be accorded the most scrupulous exactitude when the "things" are books, and the basis for their seizure is the ideas which they contain.'" *State v. J–R Distribs., Inc.*, 111 Wn.2d 764, 774, 765 P.2d 281 (1988) (quoting *Stanford v. Texas,* 379 U.S. 476, 485, 13 L. Ed. 2d 431, 85 S. Ct. 506 (1965)).[9] For example, the valid portion of the warrant in *Aday* named the titles of two very specific books. In contrast, after the invalid sections are stricken from Perrone's warrant, this is what remains: "photographs, movies, slides, video tapes, [and] magazines . . . of children . . . engaged in sexual activities . . .". Does the indefinite phrase "sexual activity" include, for example, a picture of scantily clad youths embracing on a couch? Reasonable minds can differ, but such a depiction is not proscribed by the statute. "Sexual activity" is too loose a phrase to give clear guidance to the officer. In the context of First Amendment searches, "nothing is left to the discretion of the officer executing the warrant." *Stanford v. Texas,* at 485 (quoting *Marron v. United States,* 275 U.S. 192, 196, 72 L. Ed. 231, 48 S. Ct. 74 (1925)).

Here the particularity requirement could easily have been satisfied by relying upon Washington's carefully and tightly drawn child pornography statute.[10] The statute

---

[9]*See also Maryland v. Macon,* 472 U.S. 463, 86 L. Ed. 2d 370, 468, 105 S. Ct. 2778 (1984) (The First Amendment imposes special constraints on searches and seizures "and requires that the Fourth Amendment be applied with 'scrupulous exactitude'" (quoting *Stanford v. Texas,* at 485)).

[10]Former RCW 9.68A.050 prohibits dealing in depictions of minors engaged in "sexually explicit conduct", defined at RCW 9.68A.011(3) as:
  "(a) Sexual intercourse, including genital–genital, oral–genital, anal–genital, or oral–anal, whether between persons of the same or opposite sex or between humans and animals;
  "(b) Penetration of the vagina or rectum by any object;
  "(c) Masturbation, for the purpose of sexual stimulation of the viewer;

meets constitutional standards by including specific and graphic definitions of child pornography. Had the statute merely proscribed pictures of "children engaged in sexual activities" it would be struck down as unconstitutionally vague. Likewise, because this case directly involves the First Amendment, the warrant should fail for precisely the same reason.

While there is nothing in the record to suggest bad faith on the part of the officers or the magistrate, it is clear that the police had no idea what materials could properly be seized as evidence of the crime involved. Here there was simply no scrutiny by a neutral and detached magistrate. Had the magistrate read or been familiar with Washington's child pornography statute, he would surely not have signed the warrant in its present form. Rather, the magistrate signed the warrant with apparently no more than a cursory glance, failing to apply the requirements of the Fourth Amendment with precision, much less with the "scrupulous exactitude" required by the First Amendment.

To give substance to the Fourth Amendment, gross abuses in the warrant procedure must not be tolerated. Just as *Miranda* warnings and other prophylactic rules have limited state investigatory power, police officers and magistrates should be alerted that there are limits to the severance doctrine that threaten dismissal of the proceeding.

RCW 9.68A.050 describes precisely what materials it is a crime to deal in, and hence, what constitutes evidence of

---

"(d) Sadomasochistic abuse for the purpose of sexual stimulation of the viewer;

"(e) Exhibition of the genitals or unclothed pubic or rectal areas of any minor for the purpose of sexual stimulation of the viewer;

"(f) Defecation or urination for the purpose of sexual stimulation of the viewer; and

"(g) Touching of a person's clothed or unclothed genitals, pubic area, buttocks, or breast area for the purpose of sexual stimulation of the viewer."

the crime.[11] I doubt very much that all rational adult persons would agree on what materials constitute "children engaged in 'sexual activities'". Majority, at 696. I am absolutely certain that rational adults, in executing a search warrant, would not limit the meaning of "sexual activities" to only those items described by the statute.

To guard against unconstitutional seizures of First Amendment materials, officers must be precisely guided in their selection of items to be seized. Warrants must either incorporate the statutory definition, or paraphrase it in a reasonable manner so the officer can know whether any given item meets the definition of what is to be seized.

For these reasons I would affirm the lower court's suppression of items seized.

After modification, further reconsideration denied January 11, 1991.

Review granted at 116 Wn.2d 1017 (1991).

---

[11]RCW 9.68A.050 prohibits dealing in "visual or printed matter that depicts a minor engaged in an act of sexually explicit conduct". RCW 9.68A.011 defines "visual or printed matter" to be "any photograph or other material that contains a reproduction of a photograph."