IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31313-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | OPINION PUBLISHED |
| | ) | IN PART |
| ADRIANE CONSTANTINE, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — During a helicopter flyover of property located on
Reevas Basin Road near Tonasket, Washington, law enforcement observed at least 20
marijuana plants growing in a partially uncovered greenhouse. The property belonged to
Morgan Davis, husband of Adriane Constantine. An Okanogan deputy sheriff obtained a
warrant to search two greenhouses, a house, and a shed on the property. The search
uncovered numerous marijuana plants in the greenhouses. In the home, the officers found
processed marijuana and distribution paraphernalia. Ms. Constantine was charged with
and found guilty of manufacture of marijuana. Ms. Constantine appeals, contending the
officers lacked probable cause to search the house because officers failed to establish a
nexus between the marijuana in the greenhouses and the house. She also contends that

the court erred by requiring the testimony of Dr. Thomas Orvald before it would instruct the jury on her medical marijuana affirmative defenses.

We conclude that there was a sufficient nexus between the greenhouses and the house to support probable cause to search the house. We determine that Ms. Constantine raised only the designated provider medical marijuana affirmative defense, and conclude that the trial court erred by requiring Dr. Orvald to testify as a prerequisite to allowing Ms. Constantine to raise this defense. Specifically, the medical marijuana laws do not require Ms. Constantine to prove that the patient to whom she is a provider have a specific terminal or debilitating medical condition; rather, the laws require that she prove that such patient *was diagnosed* by a physician as having a terminal or debilitating medical condition. Because the testimony of the diagnosing physician is not necessary to establish this, we reverse Ms. Constantine's conviction.

## FACTS

On June 30, 2010, Detective Jan Lewis of the North Central Washington Narcotics Task Force and Deputy Terry Shrable of the Okanogan County Sheriff's Office flew in a helicopter over property located near Tonasket, Washington. The officers observed two greenhouses. One greenhouse was partially uncovered, revealing approximately 20 large growing marijuana plants. The officers noted other buildings on the property, including a

2

small stick built house located just east of the greenhouses and a small stick built shed west of the greenhouses. Officers confirmed that the address of the property was 44 Reevas Basin Road and that it was owned by Mr. Davis.

Detective Lewis flew over the property again on July 6. The tops of the greenhouses were covered with plastic, but the detective saw dark green coloring through the plastic. Detective Lewis believed the green color to be growing marijuana plants.

The next day, Detective Lewis obtained a warrant to search the two greenhouses, the house, and the shed on Reevas Basin Road. The search warrant authorized searching for evidence of manufacturing marijuana, including books, records, receipts, ownership of the residence, and identifying information. In addition to a narrative of events by Detective Lewis, the warrant included an aerial photograph of the property taken during the July 6 flyover. The affidavit stated, "In this photo you can clearly see the green houses to the left of the house. The larger of the two green houses was half opened when the initial flight was done. This is the one that I could see growing marijuana plants in. Everything in the photo including the outbuildings is on the same parcel of property. There are no other driveways or houses except for the one in the photo that have access to these marijuana plants." Clerk's Papers (CP) at 167.

3

On July 8, officers executed the search warrant. Upon arrival at the property, officers made contact with Ms. Constantine outside of the residence. Officer Steve Brown told Ms. Constantine that the officers were executing a search warrant on the home and informed her of the purpose of the search. Both before and after execution of the warrant, Ms. Constantine told the officers that she knew the law, had a marijuana card, and wanted a lawyer. Ms. Constantine asked Officer Brown to retrieve her medical marijuana card from inside the house. The officer declined and advised her of her *Miranda*[1] rights. Officer Brown told Ms. Constantine that the medical marijuana card would not make a difference because there were too many plants. The officer did not further question Ms. Constantine, but she continued to make statements without being questioned. Ms. Constantine's medical marijuana card was found in her purse during the search of the house.

Officers located approximately 121 growing marijuana plants. The plants were primarily found in the greenhouses, with the exception of a few plants found growing outside. Inside the residence, officers found various quantities of processed marijuana, packaged marijuana, marijuana seeds, paperwork, receipts, cash, an electronic scale, and packaging material. In the small shed, officers found several dried marijuana plants.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Ms. Constantine was arrested and charged with one count of manufacture of marijuana under RCW 69.50.401(1). She moved to suppress the evidence found in the house and the shed. She argued that the officers lacked probable cause to search the house and shed because there was no nexus between the greenhouses and the house and shed.

The trial court denied the motion. The court concluded that a clear legal nexus existed between the house, greenhouses, outbuildings, and immediate surrounding areas. In support of this conclusion, the court found that the photograph and the testimony showed the land, house, greenhouses, garden area, and outbuildings all within a clearly defined living compound. Additionally, the residence was approximately 50 to 70 feet from the greenhouses and there were no other houses nearby. The buildings were well separated from other structures or homes; the nearest other structure to the property was over 700 yards away. Also, only one access road approached the property and ended on the property.

Months prior to trial, the State filed a motion in limine. One aspect of the motion in limine sought to suppress any reference to a medical marijuana defense for Ms. Constantine, either as a designated provider or as a qualifying patient. Ms. Constantine asserted a designated provider defense, but not a qualifying patient defense. To support

5

the designated provider defense, Ms. Constantine presented only three documents: (1) A medical marijuana authorization for Tristan Gilbert, signed by Dr. Thomas Orvald; (2) A document signed by Mr. Gilbert naming Ms. Constantine as his designated provider for supplying his medical marijuana; and (3) A verification from the Washington State Department of Health confirming that Dr. Orvald was a licensed physician in the state of Washington during the relevant time period.

The medical marijuana authorization, signed by Dr. Orvald, stated that Mr. Gilbert was his patient, that he had diagnosed Mr. Gilbert with a terminal illness or debilitating condition as defined by RCW 69.51A.010, that he had advised Mr. Gilbert of the potential risks and benefits of the medical use of marijuana, and that in his opinion, the potential benefits of the medical use of marijuana would likely outweigh the health risks. Ms. Constantine did not submit any medical records that identified the nature of Mr. Gilbert's illness or condition. Moreover, the medical marijuana authorization signed by Dr. Orvald did not specify the nature of Mr. Gilbert's illness or condition, nor did it identify what if any medical records were reviewed by Dr. Orvald prior to him signing the medical authorization. The designation of provider authorization included a limit of 15 plants and was in effect at the time of the search of Mr. Davis's property.

6

Even though Ms. Constantine stated in her motion that she was not asserting an affirmative defense based on her individual status as a qualifying patient, she nevertheless presented two authorization documents to establish her qualifying use. Both authorizations stated that Ms. Constantine was being treated for a terminal illness or debilitating condition. The first authorization was signed by Dr. Orvald and was effective from March 2, 2009 to March 2, 2010. The second authorization was signed by Dr. Jason Ling and was effective from August 23, 2010 to August 23, 2011. Neither document was in effect at the time of the July 8, 2010 search. Also, neither document listed Ms. Constantine's illness nor her condition.

During the motion in limine argument, defense counsel addressed the discrepancy between the 121 marijuana plants found and the 15 plants that the defendant was permitted to grow for Mr. Gilbert:

> Basically with regard to the designated provider defense, my client would
> . . . offer, by way of proffer, that [she] . . . was responsible for growing the
> 15 plants [for] Mr. Gilbert—they never went to fruition . . . . But that's—
> the 15 plants were hers and the other plants were [her husband's].
>     . . . .
>     . . . I think there was a distinction . . . in the way they were lined up
> out there.

RP at 345-46.

7

The court found that the Washington Pattern Jury Instructions Criminal 52.11 set

out the six elements of the designated provider defense.[2] The court noted that Ms.

Constantine was required to prove that Mr. Gilbert was a qualifying patient, which in turn

required proof that he had been diagnosed by a physician as having a terminal or

debilitating medical condition. *See* RCW 69.51A.010(4).

The court ruled that Ms. Constantine presented questions of fact for most of the six

elements, but that the three documents submitted in response to the State's motion in

limine were insufficient to prove that Mr. Gilbert was a qualifying patient. The court

reasoned:

---

[2] It is a defense to a charge of manufacture of [manufacture] of marijuana that:

(1)     the defendant is eighteen years of age or older; and
(2)     the defendant was designated as a designated provider to a *qualifying patient* prior to assisting the patient with the medical use of marijuana; and
(3)     the defendant possessed no more marijuana than necessary for the qualifying patient's personal, medical use for a sixty-day period; and
(4)     the defendant presented a copy of the qualifying patient's valid documentation to any law enforcement official who requested such information; and
(5)     the defendant did not consume any of the marijuana obtained for the personal, medical use of the qualifying patient for whom the defendant is acting as designated provider; and
(6)     the defendant was the designated provider to only one qualifying patient at any one time.

11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL

The question is whether medical testimony from the authorizing physician is required to establish [certain] elements of the defense. The medical documents do not speak for themselves. In order to obtain instructions on designated provider, the defendant must provide evidence that Mr. Gilbert was [a] qualifying patient. . . . Mr. Gilbert's testimony and documentation is not sufficient. Medical testimony is required from the prescribing provider. . . . Testimony about the underlying condition and it being a qualifying condition to make Mr. Gilbert a qualifying patient is necessary.

. . . .

The jury must find the existence of the debilitating or terminal condition. The medical marijuana statute does not overrule the rules of evidence. Separate from the paperwork, there must be proof of the terminal or debilitating condition.

Based on the information provided to the court [in the motion in limine], the court will not instruct on [the] medical marijuana designated provider defense without medical testimony that Mr. Gilbert is a qualifying patient.

CP at 51-52.

Ms. Constantine did not or could not obtain Dr. Orvald's testimony at trial.

Rather, Ms. Constantine sought to submit her qualifying patient medical marijuana

authorization and designated provider authorization from Mr. Gilbert to Ms. Constantine.

The State moved to suppress this evidence. The State contended that the evidence was

not needed because there was no ability for Ms. Constantine to get a qualifying patient

affirmative defense instruction. Ms. Constantine argued that the evidence explained the

story of the search, including Ms. Constantine's words to officers in execution of the

---

52.11, at 1014 (3d ed. 2008) (emphasis added).

9

warrant. The State contended that this effort was a back door approach to raise the affirmative defense without a jury instruction, and that Ms. Constantine had not offered the proof to assert either affirmative defense.

The court granted the motion to exclude the evidence. The court found that Ms. Constantine was not entitled to a qualifying patient affirmative defense because her authorization for her personal use was expired at the time of the search and therefore not valid. For the designated provider defense, the court relied on its earlier ruling on the matter. Even so, the court allowed Ms. Constantine to explain her statements to officers that she wanted to get the card. A jury found Ms. Constantine guilty of manufacture of marijuana.

Ms. Constantine appealed. She first challenges the denial of her motion to suppress the evidence found in the search of the house. She contends that officers lacked probable cause to search the house and shed because there was no nexus between these buildings and the suspected criminal activity observed in the greenhouses. She next challenges the trial court's refusal to give the qualifying patient and designated provider affirmative defense jury instructions. She contends that the evidence was sufficient to submit the affirmative defense instructions to the jury.

ANALYSIS

*Probable Cause to Search the House.* Review of a probable cause determination

has a historical fact component and a legal component. *State v. Emery*, 161 Wn. App.

172, 201-02, 253 P.3d 413 (2011), *aff'd*, 174 Wn.2d 741, 278 P.3d 653 (2012). On

matters of historical fact finding, we apply an abuse of discretion standard when

reviewing a magistrate's decision on whether information provided in the warrant is

reliable and credible. *Id.* at 202. Then, for the legal component, we apply de novo review

to determine whether the qualifying information as a whole amounts to probable cause.

*Id.* We consider only the information that was available to the issuing magistrate. *State

v. Olson*, 73 Wn. App. 348, 354, 869 P.2d 110 (1994). "'It is only the probability of

criminal activity, not a prima facie showing of it, that governs probable cause. The

[issuing judge] is entitled to make reasonable inferences from the facts and circumstances

set out in the affidavit.'" *Emery*, 161 Wn. App. at 202 (alteration in original) (quoting

*State v. Maddox*, 152 Wn.2d 499, 505, 98 P.3d 1199 (2004)).

A search warrant may only be issued upon a determination of probable cause.

*State v. Cole*, 128 Wn.2d 262, 286, 906 P.2d 925 (1995). Probable cause exists where

there are facts sufficient to establish a reasonable inference that the defendant is involved

11

in criminal activity and that evidence of the criminal activity can be found at the place searched. *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999).

A warrant is overbroad and violates the particularity requirement if the warrant authorizes police to search persons or seize things for which there is no probable cause. *State v. Maddox*, 116 Wn. App. 796, 806, 67 P.3d 1135 (2003), *aff'd*, 152 Wn.2d at 499. Probable cause requires not only a nexus between criminal activity and the item to be seized but also a nexus between the item to be seized and the place to be searched. *Thein*, 138 Wn.2d at 140 (quoting *State v. Goble*, 88 Wn. App. 503, 509, 945 P.2d 263 (1997)). "Absent a sufficient basis in fact from which to conclude evidence of illegal activity will likely be found at the place to be searched, a reasonable nexus is not established as a matter of law." *Id.* at 147.

Facts that individually would not support probable cause can do so when viewed together with other facts. *State v. Garcia*, 63 Wn. App. 868, 875, 824 P.2d 1220 (1992). The application for a search warrant must be judged in the light of common sense, resolving all doubts in favor of the warrant. *State v. Partin*, 88 Wn.2d 899, 904, 567 P.2d 1136 (1977). "Judges looking for probable cause in an affidavit may draw reasonable inferences about where evidence is likely to be kept, including nearby land and buildings

12

under the defendant's control." *State v. Gebaroff,* 87 Wn. App. 11, 16, 939 P.2d 706 (1997).

Here, the nexus requirement is met. The warrant contains information that Mr. Davis, Ms. Constantine's husband, owns and controls the property on which the buildings stand and that the type of evidence sought could be found in the greenhouses, the house, and the shed. The relevant facts are that officers observed at least 20 marijuana plants growing in a greenhouse on Mr. Davis's property. Located close to the greenhouses were a home and a shed. These buildings were on a clearly defined living compound owned by Mr. Davis. Only one road driveway accessed both the greenhouses and the house, and dead ended on the property.

The illegal activity identified in the affidavit is the manufacture of a controlled substance, with intent to deliver marijuana. The affidavit requested a warrant to search the greenhouses, house, and shed for books, records, receipts, notes, ledgers and other papers related to the manufacture and processing of marijuana; for names and addresses of others that may be involved in the illegal possessing and trafficking of marijuana; ownership of the residence; any and all records and receipts showing dominion and control over the house at 44 Reevas Basin Road; and any or all other material evidence in violation of RCW 69.50.401, to include but not limited to drug paraphernalia for

13

packaging, weighing, distributing, and using marijuana. It is reasonable to believe that items to be seized would be found in the house located adjacent to the greenhouses. It is also reasonable to believe that the house would be used by the persons tending the marijuana in the two greenhouses and would also be used to package and weigh the large amount of marijuana that is grown in the greenhouses.

Despite Ms. Constantine's contention, *Thein* does not control the outcome of her appeal. *Thein* establishes that general statements regarding the common habits of drug dealers are not sufficient to establish probable cause when considered alone. *Thein*, 138 Wn.2d at 150-51. But here, probable cause was supported by more than an implied assumption of where evidence may be kept. It was not unreasonable for the issuing judge to believe that evidence of the crime would be found in the house based on Mr. Davis's ownership and control of the property where both the observed criminal activity and the house were located, the proximity of the home to the criminal activity, and the type of evidence sought in the warrant. We affirm the trial court's determination that the magistrate properly issued the search warrant.

*Affirmative Defenses.* We note that Ms. Constantine did not assert to the trial court that she was a qualifying patient. She, therefore, waived this affirmative defense. We also note that the trial court did not bar Ms. Constantine from asserting a designated

14

provider affirmative defense. Rather, it held that the rules of evidence required Ms. Constantine to call Dr. Orvald as a trial witness to establish whether Mr. Gilbert suffered from a terminal or debilitating medical condition.

One asserting the designated provider affirmative defense must make a prima facie showing that he or she was assisting a "qualifying patient." Former RCW 69.51A.040(3) (2007); *State v. Ginn*, 128 Wn. App. 872, 879, 117 P.3d 1155 (2005). A "qualifying patient" means a person who (a) is a patient of a health care professional; (b) *has been diagnosed* by that health care professional as having a terminal or debilitating medical condition; (c) is a resident of the state of Washington at the time of such diagnosis; (d) has been advised by that health care professional about the risks and benefits of the medical use of marijuana; and (e) has been advised by that health care professional that they may benefit from the medical use of marijuana. RCW 69.51A.010(4).

Here, the trial court interpreted RCW 69.51A.010(4) as requiring a defendant to prove that the patient actually have a terminal or debilitating medical condition. However, that subsection does not require this; rather, it requires a defendant to prove that the patient "has been diagnosed" as having a terminal or debilitating medical condition. The legislature, within constitutional limitations, may proscribe what proof is needed for an affirmative criminal defense. The legislature chose to allow designated

15

providers to rely upon a signed medical authorization without also requiring such providers to suffer criminal penalties if their reliance was misplaced. Here, it is uncontested that Dr. Orvald diagnosed Mr. Gilbert as having a terminal or debilitating medical condition. This diagnosis is sufficient. Whether the diagnosis is correct or true is not relevant. Because the correctness or the truth of the diagnosis is not relevant, the court erred in requiring Dr. Orvald to testify.[3]

The State argues that *State v. Fry*, 168 Wn.2d 1, 228 P.3d 1 (2010) requires Ms. Constantine to prove that she had a specific medical condition that qualified under the statute. We disagree. In *Fry*, Mr. Fry was diagnosed by his doctor with various conditions, none of which met that statutory definition. *Id.* at 11-13. The majority opinion did not decide whether a conclusory statement signed by a physician that his patient had a terminal or debilitating medical condition would be sufficient. However, the concurring opinion of Justice Chambers, signed by three other justices, notes that a conclusory statement signed by a physician should be sufficient. *Id.* at 18. This portion of Justice Chambers's concurring opinion was expressly approved by Justice Sanders in

---

[3] By so holding, we are not inferring that the medical authorization is self-authenticating. The medical authorization is a business record and, unless the prosecutor agrees otherwise, the defendant will be required to have the medical authorization admitted through a custodian of the record. *State v. DeVries*, 149 Wn.2d 842, 846-48, 72 P.3d 748 (2003).

his dissent. *Id.* at 23. Thus, there were five justices who held that a conclusory statement signed by a physician that his patient has a terminal or a debilitating condition should be sufficient.[4]

The State urges us to affirm on the alternative basis that Ms. Constantine possessed much more than 15 marijuana plants, the number permitted under Mr. Gilbert's authorization. We decline to affirm on this alternative basis. Although a defendant must show by a preponderance of the evidence that she or he is entitled to the medical use of marijuana act's defense, when deciding whether to permit an issue to go to the jury, "the trial court must interpret the evidence most strongly in favor of the defendant." *State v. Otis*, 151 Wn. App. 572, 578, 213 P.3d 613 (2009). Here, during the motion in limine argument, Ms. Constantine asserted that she was responsible for growing only the 15 plants allowed in accordance with Mr. Gilbert's authorization, and that the remaining plants belonged to her husband and were segregated. Because we must interpret the

---

[4] The dissent disagrees with this holding. However, as a lower appellate court, we are required to adhere to precedent. Precedent includes a majority of justices, even a majority that is comprised of concurring and dissenting opinions.

The dissent also faults Ms. Constantine for not offering medical records to support her affirmative defense. The dissent's point would be well taken had the trial court permitted such records to establish the nature of the qualifying condition. However, the trial court did not permit this. Rather, it required Ms. Constantine to present medical *testimony* to establish a qualifying condition before it would instruct the jury on the designated provider affirmative defense.

evidence most strongly in favor of Ms. Constantine, given this record, we hold that the number of plants possessed by her is an issue of fact for the jury.

In conclusion, we hold that the trial court erred by requiring Dr. Orvald to testify in support of Ms. Constantine's affirmative defense. We therefore reverse Ms. Constantine's conviction, and remand this case for a new trial.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with RCW 2.06.040, the rules governing unpublished opinions.

*Statement of Additional Grounds for Review.* Ms. Constantine also filed a pro se statement of additional grounds. Primarily, she challenges the credibility of law enforcement testimony and offers an alternate version of events. These issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence are matters for the trier of fact and are not subject to review. *State v. Thomas*, 150 Wn.2d

18

821, 874-75, 83 P.3d 970 (2004). Ms. Constantine's remaining single statement

allegations are either too vague or contain matters outside the record of this case. They

do not merit review and will not be addressed.

_____
Lawrence-Berrey, J.

I CONCUR:

_____
Fearing, J.

No. 31313-1-III

KORSMO, J. (dissenting) — The trial court correctly recognized that there needed to be proof of the "terminal or debilitating medical condition." There was no proof, but only the conclusory statement that one existed. There also is no basis for granting a new trial on theories that were not pursued at the first trial. Adriane Constantine was free to offer the doctor's business records at trial through a proper custodian of the record, but she made no effort to do so. Having refused to pursue this approach at trial, she does not get a second trial to attempt to pursue a new defense theory for which she also has not provided a factual basis. In other words, the defendant failed to offer adequate evidence or provide a witness who could offer it. For both reasons, I dissent.

Initially, I take issue with the ruling that the defendant did not have to prove that the "qualifying patient" had been diagnosed with one of the statutory conditions that constitute a "terminal or debilitating medical condition." RCW 69.51A.010(6). The majority focuses on the word "diagnosed" in RCW 69.51A.010(4)(b)[1] while ignoring the remainder of the subsection—what the diagnosis must concern. Whether or not the diagnosed condition is a "terminal or debilitating" one is a question of fact for the jury to

---

[1] In pertinent part, RCW 69.51A.010 reads:
    (4) "Qualifying patient" means a person who:
    . . . .
    (b) Has been diagnosed by that health care professional as having a terminal or debilitating medical condition.

decide. It is just as much a factual component, subject to jury proof, as the other elements of the defense. The majority correctly concludes that the statute does not require proof that the patient actually has the disease in question, but that conclusion misses the point of the argument. The defendant does not have to show that the diagnosis was accurate, but she does have to show that it involved one of the conditions listed in RCW 69.51A.010(6).[2]

There is no such proof in this case. The salient portion of the medical authorization states: "I am treating the above named patient for a terminal illness or a debilitating condition as defined in RCW 69.51A.010." Clerk's Papers (CP) at 66. Although perhaps the jury could permissibly infer from the word "treating" that a physician must have first "diagnosed" the patient, nothing in this statement conveys what the diagnosis was. Instead, the form simply states the medical professional's (improper) legal conclusion about the unstated diagnosis. No information is provided for the jury to determine whether the condition is one recognized by statute as a basis for medical marijuana use.

In a properly presented case, the defense would offer medical evidence that the patient was diagnosed with a particular condition. The jury would receive an instruction

---

[2] The trial judge wisely recognized: "So, the statement that the underlying condition doesn't have to be provided in the valid documentation does not mean that it doesn't have to be shown at trial. It does have to be shown at trial." Report of Proceedings (RP) at 364.

based on RCW 69.51A.010(6), determine that the condition was legally recognized, and find the patient was a "qualifying patient." That did not happen here. Instead, the defense wanted the jury to speculate, based on the doctor's legal conclusion, that the patient had a qualifying condition. The trial judge, accordingly, properly rejected this offer of proof and told the defense how to cure it—present the medical evidence, which presumably would have meant the doctor's testimony since the records appeared to lack the necessary information.

Whether the diagnosis was of one of the legally recognized conditions is no less a factual question for the jury to determine than whether or not the doctor even made a diagnosis. The defense needed to establish both of those facts for the jury. Why the majority allows the doctor to make the jury's determination is unclear to me. The jury has to find the fact that the doctor "diagnosed" the patient. The fact that the patient's condition was a "terminal or debilitating" one under the statute is also a jury question. Presumably, if the doctor thought that acne or schizophrenia constituted a debilitating condition, the doctor would not be permitted to opine that the patient had a legally recognized basis for using marijuana. Why the doctor is permitted to opine that some unknown diagnosis does qualify is unclear.

The trial judge properly concluded that the authorization form was inadequate to establish that there was a "qualifying patient."

3

Secondly, the trial court correctly concluded that there was no foundation for admitting the evidence. The majority overlooks several aspects of the ruling on the motion in limine even while recognizing that the defense could present the evidence through a proper records custodian. Here, the defense simply did not have the appropriate person to present the records and made no attempt to obtain that person even after the judge told the defense what was necessary.

The prosecutor sought to exclude the patient, Tristan Gilbert, from testifying that the doctor had diagnosed him with a "terminal or debilitating medical condition" that made him a "qualifying patient." RCW 69.51A.010(4). The trial court agreed that it would be hearsay for the patient to set forth the doctor's diagnosis. The majority apparently agrees. The trial judge also ruled that Mr. Gilbert was not a proper custodian to admit the records. Once again, the majority agrees. *See* slip opinion at 16 n.3. The trial court noted that the medical marijuana statute did not overrule the Evidence Rules, nor did it set up an alternative evidentiary basis for admitting evidence, but simply left those matters to the court system. RP at 361. Accordingly, the judge told the defense that it would need to find "medical testimony" to establish the defense. CP at 52; RP at 365. These rulings were all correct, and they provide the second reason why the medical marijuana defense was properly rejected—there was no records custodian.

No. 31313-1-III
*State v. Constantine—Dissent*

Instead of seeking a records custodian to admit the records, the defense offered, both at pretrial and again at trial, to put on only Mr. Gilbert to admit the records. RP at 365, 507. Medical records are appropriately admitted at trial under The Uniform Business Records as Evidence Act, chapter 5.45 RCW. *See State v. Ziegler*, 114 Wn.2d 533, 789 P.2d 79 (1990). RCW 5.45.020 provides that such a record is "competent evidence if the custodian or other qualified witness testifies" to the method of preparation in "the regular course of business."

The authorization form is undoubtedly the doctor's business record. Mr. Gilbert is not a medical professional and did not work for the doctor. He could not testify that it was the doctor's record. He was not a records custodian for purposes of RCW 5.45.020. For this reason, also, the trial court correctly ruled that the defense did not have a basis for presenting the authorization form at trial.

The defense attempted to offer inadequate documentation through a person who was not a custodian of the deficient records. The trial judge rejected the proffer for both reasons. As both reasons were correct, we should be affirming the defendant's conviction. Since the majority reaches a contrary conclusion, I respectfully dissent.

Korsmo, J.

5