IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33833-9-III |
| | ) | (consolidated with |
| Appellant, | ) | No. 33834-7-III) |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL K. HURLBURT, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NANCY L. ST. PIERRE-WALSH, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, J. — The State of Washington appeals the trial court's orders

suppressing evidence. The trial court determined that probable cause did not support the

issuance of the search warrant to the extent the warrant permitted the search of Michael

K. Hurlburt's residence and unattached garage. The State contends the trial court erred

because (1) independent police investigation corroborated information provided by an

anonymous informant (AI), and (2) even excising the information provided by the AI, there was probable cause to search because a second officer observed the outdoor marijuana grow operation, and a sufficient nexus existed between that operation and Mr. Hurlburt's residence and unattached garage. We agree with the State's second argument and, therefore, reverse the trial court's orders suppressing evidence and remand for further proceedings.

## FACTS

The following facts are taken from the declaration in support of the search warrant. An AI reported to Detective Roland Singer that Mr. Hurlburt had a possible marijuana grow operation on his property at 41836 Paradise Lane North. The AI also told Detective Singer that Mr. Hurlburt probably did not have a medical marijuana card. The AI further said that Mr. Hurlburt was a convicted felon in possession of a handgun and referenced a photograph of Mr. Hurlburt holding a gun, kneeling in front of a cougar he had killed. Detective Singer knew that Mr. Hurlburt was a convicted felon from a 2008 case in which he had arrested Mr. Hurlburt. Detective Singer investigated and learned that Mr. Hurlburt had never applied for a cougar tag or hunting license.

Four months later, the AI again contacted Detective Singer and provided him with a copy of the earlier described photograph. The AI told Detective Singer that numerous

people in cars were entering Mr. Hurlburt's property late at night, and they were driving with their headlights turned off. The AI said Mr. Hurlburt was selling live marijuana plants to these people. Detective Singer checked Mr. Hurlburt's criminal history and discovered that Mr. Hurlburt had 22 felony convictions, including possession of marijuana with intent to manufacture or deliver.

Soon after, Detective Singer received a report from Deputy Steadman, who was on Mr. Hurlburt's property two weeks earlier in furtherance of an unrelated investigation. In the report, Deputy Steadman noted he was at the residence and saw four-foot tall marijuana plants growing in a fenced garden. The report described the garden as located east of the residence, and north of the unattached garage. An aerial photograph showing Mr. Hurlburt's property and two other nearby residences was shown to the judge who issued the search warrant.[1]

In his declaration in support of the search warrant, Detective Singer stated what he knew from his training and experience pertaining to marijuana grow operations. He stated he knew that harvested plants are usually taken into a building near a grow site to hang and dry before the marijuana is processed. He further stated it is common for

---

[1] Although a copy of the aerial photograph is in the appellate record, the copy is of such a poor quality we are unable to discern whether the outdoor marijuana grow operation is within the parameters of the photograph.

individuals who have mature marijuana plants to have a starter room on the property where young marijuana plants under lights are grown to replenish the mature plants after they are harvested. Based on this information, the judge (who also later presided over the evidentiary hearing) issued a search warrant. The search warrant authorized law enforcement to search the outdoor grow operation as well as Mr. Hurlburt's garage and residence and seize: (1) growing marijuana plants, (2) documents relating to any authorized medical marijuana patients, (3) indication of occupancy, residency, and ownership of the premises, (4) processed marijuana found in excess of the amount allotted under state law, (5) firearms located on the premises, and (6) a cougar pelt.

Law enforcement did not seize any items related to marijuana, firearms, or the cougar pelt. We infer that Mr. Hurlburt had sufficient papers that supported the legality of his marijuana grow operation. Law enforcement did, however, find evidence of illegal activities in Mr. Hurlburt's residence and unattached garage, and after obtaining a supplemental search warrant, seized that evidence.

The State charged Mr. Hurlburt with one count of possession of a controlled substance, methamphetamine, and one count of unlawful possession of an explosive device. The State also charged Nancy St. Pierre-Walsh with one count of possession of a

controlled substance, methamphetamine. This charge was based on evidence inside her purse, which was inside Mr. Hurlburt's residence and searched.

Prior to trial, the defendants filed a motion to suppress the evidence on the basis that the search was illegal. After an evidentiary hearing, the trial court ruled that the evidence should be suppressed. The trial court later entered findings of fact and conclusions of law.

The trial court noted in its findings that when it authorized the search warrant, it disregarded all statements from the AI because there was no basis for it to determine that the AI was reliable. The trial court found and concluded it also should have disregarded the picture of Mr. Hurlburt holding a firearm posing with the dead cougar because the picture was taken four months before the search warrant, and there were no facts to suggest where the picture was taken or if the firearm or the dead cougar belonged to Mr. Hurlburt. The trial court also found and concluded it should have disregarded Detective Singer's statements concerning his knowledge of marijuana grow operations because such statements were merely statements of generalized training and experience. Based on its determinations that the above-described evidence should be disregarded, the trial court concluded that a search of the garden area was legal (because of Deputy Steadman's

5

observations in the unrelated investigation), but the search of the residence and

unattached garage was too attenuated and, therefore, not legal.

The trial court determined that the practical effect of suppressing the evidence was

that no evidence supported the charges and dismissed the charges. The State appeals the

trial court's orders suppressing the evidence.

## ANALYSIS

### A. STANDARDS FOR REVIEW

Conclusions of law in an order pertaining to suppression of evidence are reviewed

de novo. *State v. Fry*, 142 Wn. App. 456, 460, 174 P.3d 1258 (2008), *aff'd*, 168 Wn.2d 1,

228 P.3d 1 (2010). The findings of fact are reviewed for substantial evidence. *State v.*

*Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Substantial evidence is evidence

sufficient to persuade a fair-minded, rational person of the truth of the finding. *Id.* When

a conclusion of law is erroneously labeled as a finding of fact, this court reviews it de

novo as a conclusion of law. *Casterline v. Roberts*, 168 Wn. App. 376, 383, 284 P.3d 743

(2012).

The State assigns error to various findings of fact. But the State fails to argue how

the challenged findings are unsupported, and in one footnote actually quotes testimony

that supports a challenged finding. We generally do not consider claims unsupported by

argument or citation to legal authority. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). We, therefore, accept the trial court's findings and conduct a de novo review to determine whether the trial court's conclusions of law are correct.

B. THERE IS A SUFFICIENT NEXUS BETWEEN THE MARIJUANA GROW OPERATION AND THE STRUCTURES SEARCHED

The State argues that even if the picture of Mr. Hurlburt and the AI's statements are excised from the search warrant, probable cause still existed to search Mr. Hurlburt's residence and unattached garage.

A search warrant may issue only on a determination of probable cause. *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999). "Probable cause exists if the affidavit in support of the warrant sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched." *Id.* This requirement means that a nexus must exist between criminal activity and the item to be seized, and also between the item to be seized and the place to be searched. *Id.* "Facts that individually would not support probable cause can do so when viewed together with other facts." *State v. Constantine*, 182 Wn. App. 635, 646, 330 P.3d 226 (2014). "The application for a search warrant must be judged in the light of common sense, resolving

all doubts in favor of the warrant." *Id.* "'Judges looking for probable cause in an affidavit may draw reasonable inferences about where evidence is likely to be kept, including nearby land and buildings under the defendant's control.'" *Id.* (quoting *State v. Gebaroff*, 87 Wn. App. 11, 16, 939 P.2d 706 (1997)).

The leading case in this area of law, and the case relied on by the defendants, is *Thein*, 138 Wn.2d 133. In *Thein*, the South King County Narcotics Task Force (Task Force) found evidence of marijuana trafficking at Laurence McKone's rented residence. *Id.* at 136. The Task Force also learned that McKone's landlord, Stephen Thein, was the source of McKone's marijuana. *Id.* at 137-38. The Task Force applied for a search warrant to search Thein's residence. In the affidavit in support of the search warrant, the affiant noted it was common for drug dealers to store drug inventory, paraphernalia, and records at their residence. *Id.* at 138-39. The *Thein* court reversed the trial court and concluded there was an insufficient nexus between the criminal activity at the rental and Thein's residence to support probable cause for the issuance of the search warrant. *Id.* at 151. Central to its conclusion, the *Thein* court held that generalized statements about the common habits of drug dealers—that they store drug inventory, paraphernalia, and records at their residence—standing alone, are not sufficient to support probable cause for a search warrant. *Id.* at 148.

8

The State relies on *Constantine*, a recent case in which we distinguished *Thein*. In *Constantine*, officers observed marijuana plants growing inside two greenhouses on property owned by Morgan Davis, Constantine's husband. *Constantine*, 182 Wn. App. at 638-40. Near the greenhouses and on the same property were a residence and a shed. *Id.* at 639. Law enforcement obtained a search warrant that allowed the greenhouses, the residence, and the shed to be searched. *Id.* at 640. The trial court denied Constantine's motion to suppress the evidence found in the residence and the shed. *Id.* at 641. In affirming, we distinguished *Thein*:

> Despite Ms. Constantine's contention, *Thein* does not control the outcome of [this] appeal. *Thein* establishes that general statements regarding the common habits of drug dealers are not sufficient to establish probable cause when considered alone. But here, probable cause was supported by more than an implied assumption of where evidence may be kept. It was not unreasonable for the issuing judge to believe that evidence of the crime would be found in the house based on Mr. Davis's ownership and control of the property where both the observed criminal activity and the house were located . . . .

*Id.* at 647-48 (citation omitted).

This appeal is legally indistinguishable from *Constantine*. The key fact is that the structures searched were on the same property where the marijuana grow activity was observed.[2] This fact, together with the type of evidence sought—young replacement

---

[2] The marijuana grow activity here proved not to be illegal, likely because Mr.

9

marijuana plants, evidence of marijuana being processed, and indicia of ownership—provided probable cause to justify the search warrant of the nearby structures. We conclude there is a sufficient nexus between the outdoor marijuana grow operation observed by law enforcement and the nearby residence and unattached garage to support probable cause. The trial court erred when it concluded otherwise. We, therefore, reinstate the charges and remand for further proceedings.

C.     ORDERS SUPPRESSING THE DEFENDANTS' POSTARREST STATEMENTS

The State assigns error to the trial court's orders suppressing the defendants' postarrest statements. The State does not argue how the trial court erred. To the extent our reversal of the trial court's suppression orders related to the search and seizure removes the basis for these orders, we authorize the trial court to vacate those orders.

D.     MISCELLANEOUS ISSUES

The trial court did not enter findings of facts or conclusions of law on various issues raised below. One of these issues is whether the search of Ms. St. Pierre-Walsh's purse was legal. We agree with the State that there is an insufficient record for us to rule

---

Hurlburt had documentation that allowed him to grow the marijuana observed on his property. Nevertheless, the presence of marijuana plants on his property provided probable cause for the search. The documentation merely provided Mr. Hurlburt an affirmative defense. *State v. Fry*, 168 Wn.2d 1, 13, 228 P.3d 1 (2010).

on these issues. We, therefore, decline to do so. On remand, the parties may argue these and other issues not considered in this opinion.

E.    APPELLATE COSTS

An appellate court has discretion to deny an award of appellate costs to the prevailing party. RAP 14.2; *State v. Nolan*, 141 Wn.2d 620, 628, 8 P.3d 300 (2000). We exercise our discretion and deny an award of appellate costs to the State. First, this appeal was not instigated by either defendant. Second, the primary reason for this appeal was the State's failure to cite *Constantine* to the trial court. Mr. Hurlburt moves this court to enlarge time to file his report of continued indigency. Because we are not awarding appellate costs to the State, the motion is moot.

Reversed and remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Fearing, C.J.

Korsmo, J.

11